

Joseph C. Gratz
415-362-6666 (main)
jgratz@durietangri.com

May 19, 2020

**VIA ECF**

The Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *International Code Council, Inc. et al. v. UpCodes, Inc. et al.*, Case No. 1:17-cv-06261-VM-DCF

Your Honor:

Defendants submit this letter brief in accordance with ECF No. 102.

### I.      The Supreme Court confirmed that "no one can own the law," so ICC cannot own the law.

The *Georgia* case presented a difficult question: whether official annotations that do not carry the force of law can be subject to copyright.  That question split the Court five to four, with the majority holding that those annotations are in the public domain, and four Justices arguing that those annotations may be subject to copyright.  But all nine Justices agreed on the answer to an easier question: whether the text of the binding laws themselves can be subject to copyright.  All nine Justices agree that they cannot. *Georgia v. Public.Resource.Org, Inc*., No. 18-1150 (2020), Slip op. at 7 ("no one can own the law"), 17 ("statutes and opinions" are not copyrightable); Thomas Dissent at 4 ("statutes and regulations cannot be copyrighted, but accompanying notes lacking legal force can be"); Ginsburg Dissent at 1 ("Beyond doubt, state laws are not copyrightable.").  And the answer to that easier question resolves this case: enacted building codes are state (and local) laws, so no one can own them.

To apply the principle that "no one can own the law" to the annotations before it, the Court needed to inquire into the process by which they were prepared.  While some texts, like statutes and judicial opinions, are very clearly "the law," other texts, like official annotations, are in a gray area.  "Rather than attempting to catalog the materials that constitute 'the law,'" therefore, the Court adopted a bright-line rule excluding from copyright "works that are (1) created by judges and legislators (2) in the course of their judicial and legislative duties," even if they are not "the law" because they do not have binding force.  Slip op. at 8-9.  The Court thus created a zone of safety around "the law": the principle that "no one can own the law" is so important it places even some materials that lack the force of law in the public domain.

The Court did not create this zone of safety around the binding law to carve away the public's rights with respect to the binding law itself.  Materials created by lawmakers in their lawmaking capacities are

in the public domain, without requiring an inquiry into whether or not they are also binding law. But this prophylactic rule supplements, and does not supplant, the principle it serves: binding law is not subject to copyright, no matter who put pen to paper.

Privately-written texts become binding law in a variety of situations, and in none of those situations does the writer end up owning the law. When a citizen drafts a ballot initiative that is put before voters and becomes law, that citizen does not own copyright in a portion of their state's statutes. When a lobbyist writes a bill and is successful in having it enacted, the lobbyist does not own copyright in a portion of the United States Code. And likewise when a private organization prepares a model code and is successful in having it adopted as the binding law, that organization does not own copyright in that law.

In the *Georgia* opinion, the Court expressed concern that copyright could create an "economy-class version of the Georgia Code" and a separate, more elaborate version for "first-class readers." Slip op. at 17. "If everything short of statutes and opinions were copyrightable, then States would be free to offer a whole range of premium legal works for those who can afford the extra benefit. A State could monetize its entire suite of legislative history. With today's digital tools, States might even launch a subscription or pay-per-law service." *Id.* A ruling for ICC here would create precisely the result the Court was trying to avoid in *Georgia*. ICC seeks to separate citizens into "economy-class" readers, who are not permitted to copy-and-paste, print, or download the law, and "first-class readers" who have a "subscription" that allows them to make full use of the law. *See* ECF No. 84-11 at ICC00069467 (describing ICC's "premiumACCESS" subscription). UpCodes, consistent with the *Georgia* opinion, brings a first-class experience to all citizens for free.

**II.     Lawmakers author the laws, no matter who originally held the pen.**

ICC may argue that the prophylactic rule announced in the *Georgia* case (even where a text is not binding, it is still in the public domain if it was authored by a lawmaker acting in a lawmaking capacity) supplants the principle that "no one can own the law." Even texts that set forth binding rules governing citizens' conduct may be subject to copyright, ICC's argument would go, if the texts themselves were drafted by someone other than a legislator.

That argument is wrong, because it would violate the principle that "no one can own the law." But even were the Court to hold that the identity of the drafter is always outcome-determinative in applying the government edicts doctrine, the texts at issue here still would be in the public domain because they are still attributable to legislators speaking in their legislative capacity. When a legislative body adopts a text as the law, that text becomes attributable to the legislative body, not to the person who held the pen. That is because when a text is adopted into law, it becomes the speech of the legislature; the legislature is its author. Indeed, the Supreme Court has observed that in the copyright context, the term "author" is given a "more enlarged definition" than "in the limited sense of a book and its author." *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 57 (1884). "An author in that sense is 'he to whom anything owes its origin; originator; maker; one who completes a work of science or literature.'" *Id.* at 57-58. The lawmakers are the "maker[s]" of the law, and therefore its authors.

The adoption of a private text as law is analogous to the government's adoption of private speech. For example, texts written by a private entity for agricultural-promotion campaigns were government

speech, and not private speech, for First-Amendment purposes where the government "exercise[d] final approval authority over every word used in every promotional campaign." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 561 (2005). Just as the Secretary of Agriculture was the author of those promotional campaigns, so the New York State Legislature is the author of the New York State Building Code, even though much of the text was written by a private party and then adopted by the government.[1]

The Supreme Court's rule that "no one can own the law" does not depend on who held the pen when the law was written, or what contractual arrangements were made in an attempt to circumvent that principle. Because it is lawmakers in their lawmaking capacity who make binding law, they are the "authors" of the binding law.

### III. The *Georgia* case resolves the claims both as to Current UpCodes and Historical UpCodes.

The *Georgia* case also provides helpful guidance for ICC's summary judgment motion as to Historical UpCodes. The only material present on Historical UpCodes that was not binding law was the struck-through text of code sections that lawmakers in certain jurisdictions deliberately decided *not* to adopt. ECF No. 92 at 27. These comparisons, showing the legislative history of the enacted law, are precisely the sorts of "official legal works that illuminate the law we are all presumed to know and understand," slip op. at 18, to which the Supreme Court did not want copyright to apply. They are not subject to copyright, because that redlined version reflects the work of lawmakers just as much as the enacted text of the law.

The Supreme Court was clear that "citizens, attorneys, nonprofits, and private research companies" like UpCodes should not have to "risk severe and potentially criminal penalties" simply by disseminating "official legal works." Slip op. at 18. "Some affected parties might be willing to roll the dice with a potential fair use defense. But that defense, designed to accommodate First Amendment concerns, is notoriously fact sensitive and often cannot be resolved without a trial." *Id.* "The less bold among us would have to think twice before using official legal works that illuminate the law we are all presumed to know and understand." *Id.* The Supreme Court does not want the risk and cost associated with a fair-use trial to dissuade companies like UpCodes from disseminating official legal works. That provides a further reason to rule that what UpCodes has done is not copyright infringement as a matter of law.

Respectfully submitted,

Joseph C. Gratz

---

[1] To the extent the Court rules that the term "author" is to be read narrowly, and encompasses only those who contributed their own creative expression to the text of the law, the analysis would require further discovery and briefing, since that issue did not arise in discovery in this matter. Whether such officials would be regarded as joint authors of the entire code, for example, depends on the fact-intensive inquiry whether the code was "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.