```
                                        ┌─────────────────────────────────┐
                                        │ USDC SDNY                       │
                                        │ DOCUMENT                        │
                                        │ ELECTRONICALLY FILED            │
                                        │ DOC #:_____             │
                                        │ DATE FILED: 3/1/2021            │
                                        └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
INTERNATIONAL CODE COUNCIL, INC.,    :
                                     :
                   Plaintiff,        :    17 Civ. 6261 (VM)
                                     :    20 Civ. 4316 (VM)
        - against -                  :
                                     :    **DECISION AND ORDER**
UPCODES, INC., et al.,               :
                                     :
                   Defendants.       :
-----------------------------------X

**VICTOR MARRERO, United States District Judge.**

     Plaintiff International Code Council, Inc. ("ICC" or
"Plaintiff") commenced this action on June 5, 2020, alleging
false advertising and unfair competition by defendants
UpCodes, Inc. ("UpCodes"), Garrett Reynolds, and Scott
Reynolds (collectively, "Defendants"). (See "Complaint," ICC
v. UpCodes, et al., No. 20 Civ. 4316 (the "False Advertising
Docket"), Dkt. No. 1.) ICC alleges that Defendants falsely
claim to provide updated and accurate building codes on their
website, when in fact the posted codes contain numerous
errors.

     Now before the Court is the parties' premotion letter
exchange regarding dismissal of the Complaint (see "Letter
Motion," ICC v. UpCodes, et al., No. 17 Civ. 6261 (the
"Copyright Docket"), Dkt. No. 111), which the Court construes

as a motion to dismiss[1] pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the motion is **GRANTED** in its entirety.

## I.   BACKGROUND

A.   FACTS[2]

ICC is a nonprofit corporation that develops model codes for the design and construction of the built environment, including building codes, fire safety codes, plumbing codes, and more. These model codes, known as the "International Codes" or "I-Codes," set forth standard rules, conditions, and guidelines for various products and processes, and also delineate various technical specifications, measurements, and testing methods that apply to those products and processes.

Federal, state, and local governments frequently incorporate such standards into their statutes and regulations. Adopting privately developed model codes saves governments time and money and benefits building

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to Plaintiff, as required under the standard set forth in Section II, infra. Though the Court does not rely on facts beyond those described herein to resolve the present motion, additional factual background can be found in the summary judgment order on the consolidated case. See Int'l Code Council, Inc. v. UpCodes, Inc., No. 17 Civ. 6261, 2020 WL 2750636 (S.D.N.Y. May 27, 2020).

professionals, engineers, and the public more broadly. Because model codes are drafted by groups familiar with the particular subject matter of their codes, governmental adoption of model codes also helps align the law with industry best practices.

ICC develops the codes through a consensus process and revises the codes regularly to reflect changes in the industry. ICC publishes revised I-Codes every three years, and it also publishes custom codes that reflect versions of the codes as adopted by states and local governments (the "Custom Codes").

ICC incurs substantial costs in developing the Custom Codes. It pays for the salary and benefits of its administrative and expert staff, office space, facilities, information technology, outreach and educational efforts, and the costs of code publication. ICC incurs the up-front costs of its code development and recoups the costs, at least in part, from the sale of the I-Codes and the Custom Codes through its online store. ICC also provides users with access to additional features through its premiumACCESS tool, but its primary funding source is the sale and licensing of publications containing its copyrighted works.

UpCodes is a for-profit business founded and run by brothers Garrett and Scott Reynolds. Scott Reynolds worked as

an architect prior to founding UpCodes and has experience using and interpreting state and local building codes. Garrett Reynolds is a software engineer who designed the company website. The UpCodes website provides access to materials and tools of particular importance to building professionals, such as the state and local building codes that govern their projects.[3]

The Complaint alleges that UpCodes directly competes with ICC by selling or giving away unauthorized copies of the I-Codes and Custom Codes to both customers and prospective customers. As further detailed below, ICC alleges that while UpCodes claims its codes are up-to-date and contain integrated amendments, Upcodes's codes actually contain numerous errors.

1.   <u>Representations of Accuracy and Completeness</u>

According to the Complaint, Defendants falsely assert that the posted codes are "always up to date," and the UpCodes website assures customers that they will "never work from

---

[3] UPCODES: SEARCHABLE PLATFORM FOR BUILDING CODES, https://up.codes/ (last visited Feb. 24, 2021). See <u>Thomas v. Westchester Cty. Health Care Corp.</u>, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (quoting <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 46–48 (2d Cir. 1991) ("Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint.")); <u>MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP</u>, No. 17 Civ. 07568, 2018 WL 847014, at *5 n.1 (S.D.N.Y. Jan. 12, 2018), report and recommendation adopted, No. 17 Civ. 7568, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) (explaining that "Federal Rule of Evidence 201(b) permits a court to take judicial notice of facts that are 'not subject to reasonable dispute,'" such as information in public websites) (citing cases).

outdated code." (Complaint ¶ 50.) Likewise, Defendants have claimed on Twitter that their codes are "kept up-to-date with all the amendments integrated natively into the code." (Id. ¶ 51.) And according to ICC, UpCodes falsely asserts that it provides the building industry with "'a complete understanding of relevant material' for their projects" (id. ¶ 52), and helps customers "surface the most critical code sections" (id. ¶ 56).

ICC provides screenshots of the UpCodes website in which the following additional claims are made:

- "Your code library in one place, always up to date";

- ". . . never work from outdated code";

- "Codes are organized by state and jurisdiction to provide a full understanding of the applicable codes for your project";

- "Understand all the requirements for your jurisdiction in one place."

(Id. ¶ 52.) ICC further alleges that customers rely on these representations and cites a customer review in which the customer stated that he is "much more comfortable knowing that my team is working off the most up-to-date codes." (Id. ¶ 59.)

2.   Representations of Amendment Integration

ICC alleges that Defendants "falsely advertise and promote that UpCodes offers 'Integrated Amendments,'" as

depicted in certain website screenshots. (Complaint ¶ 54.)
The screenshots contain the following claims:

- "Integrated Amendments: . . . Never miss important requirements in your jurisdiction";

- "UpCodes has the adopted codes as enacted by the state or local jurisdiction"; and

- "While some states provide integrated codes . . . Where these are not provided, UpCodes has integrated the local amendments . . . ."

(Id.) The Complaint adds that on the purchasing page for premium access, Defendants again falsely claim to offer integrated amendments. In a website screenshot of the purchasing page, UpCodes asserts that the premium accounts offer: "All Codes," "Code updates inserted," and "Local amendment styling." (Id. ¶ 55.)

ICC further alleges that Defendants falsely asserted on Twitter that their copies of building codes are "kept up-to-date with all the amendments integrated natively into the code," and separately that they had integrated "all 973 amendments" to the New Jersey 2018 codes. (Id. ¶¶ 51, 61.)

### 3.   Code Errors Undermining These Representations

ICC argues that UpCodes's claims of accuracy, completeness, and code integration are all rendered false by numerous errors in UpCodes's posted codes. In particular, ICC alleges errors in UpCodes's Wyoming, Virginia, Oregon, and New Jersey codes.

In the Wyoming codes, Plaintiff alleges that Defendants posted the entire text of ICC's model International Residential Code 2015 as the "Residential Code 2015 of Wyoming," even though the model code was not incorporated in its entirety. Moreover, Defendants posted eleven appendices to the "Building Code 2015 of Wyoming," which were not adopted -- including Appendix M regarding Tsunami-Generated Flood Hazards, and Appendices A and H. In addition to erroneously including these appendices, ICC alleges that Defendants failed to incorporate certain amendments Wyoming made to the I-Codes, including, for example, amendments to the terms "owner," "building official," "fire chief," and "enforcing authority."

In the Virginia codes, ICC alleges Virginia removed certain sanctions from the model International Building Code 2015 that were not deleted from the text of the code appearing on UpCodes's website. Similarly, ICC further alleges that Virginia made significant amendments to Chapter 1 of the model International Residential Code 2015, but that those amendments are not reflected in the text of the code that appears on the website.

In the Oregon codes, ICC alleges that UpCodes's copy of the Oregon Structural Specialty Code contains "numerous errors," including, for example, exclusion of Appendices C,

I, and P from the model code, even though the website acknowledges that these appendices were adopted.

Lastly, in the New Jersey codes, ICC alleges that despite Defendants' claim to have integrated all 973 amendments to the New Jersey 2018 codes, the UpCodes website does not reflect all the amendments. For example, ICC contends that while the New Jersey building code deleted Chapter 1 of the model International Building Code 2018, UpCodes's website continues to reference Chapter 1.

### 4.   Claim that it is the "Only Source"

ICC further contends that Defendants falsely claim that UpCodes is the "only source" of state amendments integrated into the model code, when in fact ICC also offers custom codes on its website. (Complaint ¶¶ 63-64.)

### B.   PROCEDURAL HISTORY

Several years before initiating the present suit, ICC filed a complaint against Defendants on August 17, 2017 alleging one count of copyright infringement. (See Copyright Docket, Dkt. No. 1.). After extensive discovery in that case, ICC moved for summary judgment on May 31, 2019, arguing that Defendants infringed its copyrights in certain I-Codes by posting them and derivative works on the UpCodes website. (See Copyright Docket, Dkt. No. 84.) Defendants filed a cross-motion for summary judgment, arguing that none of their

copying constituted copyright infringement because the material posted was either in the public domain or otherwise protected under copyright defenses including merger and fair use. (See Copyright Docket, Dkt. No. 85.)

In a comprehensive opinion dated May 27, 2020 (the "Summary Judgment Order") the Court denied both motions. See Int'l Code Council, Inc. v. UpCodes, Inc., No. 17 Civ. 6261, 2020 WL 2750636 (S.D.N.Y. May 27, 2020) ("ICC"). The Court reasoned that, because the "law is in the public domain," by posting accurate versions of the I-Codes as adopted into law, UpCodes had not infringed ICC's copyrights as a matter of law. Id. at *16. On the other hand, a defendant might infringe a copyright when copying "model codes as model codes or indiscriminately mingl[ing] the enacted portions of the model codes with portions not so enacted." Id. at *17. Thus, because factual disputes existed as to whether UpCodes had mingled enacted codes with unadopted model text, Defendants were not entitled to summary judgment either. Id. at *18.

Having denied both motions, the Court directed the parties to submit a proposed timeline for trial within twenty days of the date of the Summary Judgment Order. Id. at *31. Before the twenty days had elapsed, on June 5, 2020, ICC initiated the instant lawsuit. (See Complaint.) On June 15,

2020, the Court consolidated the cases for pretrial purposes. (See Copyright Docket, Dkt. No. 106.)

C.   <u>PARTIES' ARGUMENTS</u>

Consistent with the Court's Individual Practices, Defendants notified Plaintiff of perceived deficiencies in the Complaint by letter dated August 7, 2020. (See "Premotion Letter," False Advertising Docket, Dkt. No. 108.) Defendants argue that the claims fail because (1) the purported misrepresentations are either not false or nonactionable puffery; (2) the statements are not material to a purchasing decision; and (3) ICC cannot allege injury because ICC's own website contains more errors than UpCodes's website.

Plaintiff responded by letter dated August 14, 2020, challenging these asserted grounds for dismissal. (See "Opposition," False Advertising Docket, Dkt. No. 110.) Plaintiff counters that (1) the challenged statements are not puffery and whether they are accurate is a question of fact and thus inappropriate for resolution on a motion to dismiss; (2) the statements are material, and at any rate, whether they are material is also a fact issue; and (3) the alleged errors in ICC's website also raise fact issues, and there is no evidence that consumers are aware of the alleged errors.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

In resolving a motion to dismiss, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Bos. Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the Court must draw reasonable inferences in favor of the nonmoving party. See Chambers v.

TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

A.   FALSE ADVERTISING

Under Section 43(a) of the Lanham Act, a person is liable for false advertising when the person:

> in connection with any goods or services . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which—
> . . .
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities . . . of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a)(1). "To state a false advertising claim under section 43(a), a plaintiff must plausibly allege 'that the statement in the challenged advertisement is false.'" Weight Watchers Int'l, Inc. v. Noom, Inc., 403 F. Supp. 3d 361, 369 (S.D.N.Y. 2019) (quoting Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014)).

"A false advertising claim may be based on one of two theories." Merck, 760 F.3d at 255 (internal quotation marks and citation omitted). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true,

it is likely to deceive or confuse customers." Id. (quoting
S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d
Cir. 2001)). "A message can only be literally false if it is
unambiguous." Church & Dwight Co. v. SPD Swiss Precision
Diagnostics, GmBH, 843 F.3d 48, 65 (2d Cir. 2016) (citing
Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158
(2d Cir. 2007)). In other words, "if the language or graphic
is susceptible to more than one reasonable interpretation,
the advertisement cannot be literally false." Time Warner,
497 F.3d at 158. On the other hand, a statement is "likely to
deceive or confuse," and is "impliedly false" rather than
literally false, when it leaves "an impression on the listener
or viewer that conflicts with reality." Church, 843 F.3d at
65 (citations omitted).

     In addition to falsity, under either theory, "the
plaintiff must also demonstrate that the false or misleading
representation involved an inherent or material quality of
the product." Apotex Inc. v. Acorda Therapeutics, Inc., 823
F.3d 51, 63 (2d Cir. 2016) (citations omitted). In other
words, the alleged misstatement must be "likely to influence
purchasing decisions." Id. (quoting Nat'l Basketball Ass'n v.
Motorola, Inc., 105 F.3d 841, 855 (2d Cir. 1997)). Moreover,
to establish a false-advertising claim, a plaintiff must also
plausibly allege "that the false statement was made in

interstate commerce, and that the plaintiff was injured." Weight Watchers, 403 F. Supp. 3d at 369 (quoting Merck, 760 F.3d at 255).

New York General Business Law Sections 349 and 350 respectively prohibit deceptive business practices and false advertising. Weight Watchers, 403 F. Supp. 3d at 381 (quoting Denenberg v. Rosen, 897 N.Y.S.2d 391 (App. Div. 2010)). The elements of each are substantially similar to false advertising under the Lanham Act because "[t]o successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 967 N.E.2d 675 (N.Y. 2012)).

1.   Representations Regarding Amendment Integration

Defendants argue that the Complaint does not adequately allege that UpCodes's statements regarding Integrated Amendments are false. This is because, according to Defendants, while there may be "about two dozen" errors among the "tens of thousands" of Integrated Amendments on the UpCodes website, these minimal errors do not establish that

14

the representation that UpCodes displays Integrated Amendments is false.

Plaintiff counters that Defendants minimize the scope of their mistakes. Plaintiff asserts that the errors specifically identified in the Complaint are "not an exhaustive list" (see Complaint ¶ 44), and urges that it is not required to plead every error at this stage. Moreover, Plaintiff urges that even if there are only two dozen errors among tens of thousands of integrated codes, that still renders the representation false.

As a threshold matter, the Court is unpersuaded by ICC's reliance on additional, unidentified errors to support its argument. The Complaint must, on its face, establish a plausible likelihood of success if the facts alleged therein are assumed to be true. See Iqbal, 556 U.S. at 678. Thus, the Court will not rely on ICC's vague and conclusory allegations about the existence of additional errors, and will instead ground its analysis in the errors plausibly alleged in the Complaint.

Even if the Complaint plausibly alleged more errors, though, the Court would still conclude that the statements regarding amendment integration are neither literally nor impliedly false. As Defendants point out, ICC acknowledges that UpCodes's website does in fact contain "some" integrated

amendments. (See Complaint ¶ 39 ("In other instances, Defendants' website incorporates some but not all amendments made by the jurisdiction.")). The claim that UpCodes offers integrated amendments is not rendered false by the fact that "some but not all" amendments are posted, or that in some instances, the amendments contain errors. The alleged errors instead undermine UpCodes's representations of accuracy and completeness, as further discussed below. To the extent the false advertising claims arise from UpCodes's representations regarding amendment integration, they are therefore dismissed.

2.   Representations of Accuracy and Completeness

Defendants argue that the statements of accuracy and completeness are nonactionable puffery because they are hyperbolic, "clearly exaggerated," and not the measurable assertions that would create liability. (Premotion Letter at 2.) Defendants further contend that the claims fail because the alleged misstatements are not "material," and ICC cannot plausibly allege injury because ICC's website contains more errors than UpCodes's website.

In response, Plaintiff argues that the alleged misstatements are not puffery because they are not vague but provable. Plaintiff further contends that the claims are not puffery because the instantaneous updating they assert *is*

possible, and consumers would not interpret the statements as hyperbolic in light of the broader context. Regarding Defendants' materiality argument, Plaintiff counters that materiality is a fact issue inappropriate for resolution at this stage and that, at any rate, the alleged misstatements were material because consumers rely on the representations of accuracy they communicate. Plaintiff further contends that any errors in its website create a fact issue and do not impact its injury because no evidence has been presented regarding any customers' awareness of the alleged errors.

a.    Puffery

Statements of puffery are nonactionable under the Lanham Act and both New York General Business Law Sections 349 and 350. See, e.g., In re Scotts EZ Seed Litig., No. 12 Civ. 4727, 2013 WL 2303727, at *11 (S.D.N.Y. May 22, 2013); Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995)).

The Second Circuit has defined puffery as either: (1) "subjective claims about products, which cannot be proven either true or false," or (2) "an exaggeration or overstatement expressed in broad, vague, and commendatory language . . . considered to be offered and understood as an expression of the seller's opinion only," or (3) "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." Time Warner,

497 F.3d at 159-160 (quoting Lipton v. Nature Co., 71 F.3d 464 (2d Cir. 1995), Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993), and Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 497 (5th Cir. 2000)). Thus, and contrary to Plaintiff's argument, a provable statement may still constitute nonactionable puffery if it fits into either of the other two detailed categories.

Under these principles, the Court is persuaded that UpCodes's representations regarding accuracy and completeness are nonactionable puffery. At the outset, the Court concludes that Plaintiff has adequately pled falsity as to these statements by alleging that while UpCodes claims that the codes it offers are complete and accurate, they are not.[4] Nonetheless, the statements of completeness and accuracy -- that, for example, UpCodes provides "a complete understanding of relevant material," its code library is "always up to date," and customers will "never work from outdated code"

---

[4] The Court notes that certain of the alleged errors do not appear to be actual errors. For example, and as the Court explained in the Summary Judgment Order, the failure to post other, related provisions does not defeat the completeness of the Wyoming codes. See ICC, 2020 WL 2750636, at *18. Likewise, the reference to Chapter 1 of the New Jersey International Building Code 2018 appears to be a reference to Chapter 1 of the American Concrete Institute's Building Code Requirements, not, as Plaintiff alleges, an erroneous reference to the model International Building Code. (See Complaint ¶ 62.) Nevertheless, that certain of the alleged errors are not actual errors does not render all of ICC's allegations defective. Accepting all factual allegations in the Complaint as true, the Court concludes that sufficient errors have been identified to establish falsity.

(Complaint at ¶¶ 50, 52) -- are nonactionable because they are exactly the type of "exaggerated" and "boasting" statements "upon which no reasonable buyer would be justified in relying." Time Warner, 497 F.3d at 160 (citations omitted). Indeed, numerous courts have treated the terms "accurate" and "complete" as puffing language. E.g., Patt v. Antech Diagnostics, Inc., 18 Civ. 01689, 2019 WL 6654078, at *6 (C.D. Cal. July 30, 2019) (observing "a virtual consensus among courts in the Ninth Circuit that generalized claims of dependability, reliability, or accuracy are mere nonactionable puffery"); Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009) ("[T]he Court of Appeals for the Second Circuit has recognized that advertising terms like 'complete' are puffery because they are subjective and cannot be proven true or false.") (citing Lipton, 71 F.3d at 474).

The fact that these statements exist in the context of researching legal requirements does not prohibit their classification as puffery, contrary to Plaintiff's argument. The Court recognizes the importance of maintaining accurate codes and the negative consequences that can result from consumers' reliance on outdated and erroneous codes. However, codes are not static, nor are the laws that rely on them. As changes in law occur, some delay between the adoption of those

changes, their dissemination to the public, and their publication on the UpCodes website is not only understandable, but expected.[5] In other words, "no reasonable buyer" would take UpCodes's representations of accuracy and completeness to mean that the codes are instantaneously updated and at all times error-free. Thus, "there is no danger of consumer deception and hence, no basis for a false advertising claim." Stokely-Van Camp, 646 F. Supp. 2d at 526 (quoting Time Warner, 497 F.3d at 159 (internal quotation marks and citations omitted)).

This finding is further supported by a disclaimer on the UpCodes website, cited in the Complaint, in which UpCodes expressly disclaims liability for "any errors or omissions in the information or content" on its website and expressly disclaims warranting that the services provided will be "error-free." (Complaint ¶ 47); see also Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) ("[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.").

---

[5] To the extent Plaintiff argues that the errors on UpCodes's website are rampant, the Court finds the Complaint insufficient to support the plausible existence of such rampant errors. The Complaint plausibly alleges errors in the codes of four states: Wyoming, Virginia, Oregon, and New Jersey, and the conclusions contained herein are based on those errors. (See Section III.A.1, supra.)

The Court is not persuaded otherwise by ICC's reference to a passage in the Summary Judgment Order in which the Court noted that some of the codes contain "rather surprising oversights." See ICC, 2020 WL 2750636, at *18. First, the Court further noted in the Summary Judgment Order that "Defendants corrected these issues when notified by ICC." Id. at *19. Thus, the facts on which the finding of "surprising oversights" was based have since changed. And in any event, the identification of errors in the Summary Judgment Order does not conflict with the Court's conclusion on the present motion that some degree of error is expected.

Because the Court concludes that these statements are nonactionable puffery, it need not, and does not, address Defendants' arguments regarding materiality or injury. To the extent the false advertising claims are premised on UpCodes's representations of accuracy and completeness, they are dismissed.

3.   Representations Regarding Unique Services

Defendants argue that ICC has failed to establish the falsity of the statement on UpCodes's website that it is "the only source of integrated amendments." As it appears on the UpCodes website, the representation is actually qualified, and indeed ICC's own screenshot shows that UpCodes claims to be the only source of integrated codes only for "jurisdictions

[that] do not provide integrated code books." (Complaint ¶ 63.) Because ICC does not allege that the statement as qualified is false, Defendants insist that ICC has not established falsity.

Because Plaintiff does not respond to this argument, the Court considers it conceded. See, e.g., Simmons v. Nat'l R.R. Passenger Corp., No. 19 Civ. 6986, 2020 WL 2904847, at *4 (S.D.N.Y. June 3, 2020) ("Plaintiff has waived reliance on these other provisions, as she did not respond to Amtrak's arguments that they are inapplicable."); Hongxia Wang v. Enlander, No. 17 Civ. 4932, 2018 WL 1276854, at *7 (S.D.N.Y. Mar. 6, 2018) (finding that "the theory was abandoned because Plaintiff did not respond to Defendant's argument"); Kao v. British Airways, PLC, No. 17 Civ. 0232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").

Thus, to the extent the false advertising claims are premised on UpCodes's representations that it is the only source of certain integrated amendments, they are dismissed.

B.   UNFAIR COMPETITION

"The elements necessary to prevail on [a] cause[] of action for . . . unfair competition under New York common law mirror the Lanham Act claims." ESPN, Inc. v. Quiksilver, Inc.,

586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008). Because it has found that Plaintiff's Lanham Act claim must be dismissed for the reasons set forth above, the common-law unfair competition claim is likewise dismissed in its entirety. E.g., Weight Watchers, 403 F. Supp. 3d at 381.

### IV.   ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants UpCodes, Inc., Garrett Reynolds, and Scott Reynolds to dismiss the Complaint of Plaintiff International Code Council, Inc. (Dkt. No. 111) is **GRANTED**; and it is further

**ORDERED** that within twenty days of the entry of this Order the parties shall submit an updated timeline for trial on the complaint in the copyright action (ICC v. UpCodes, et al., No. 17 Civ. 6261, Dkt. No. 1.).

**SO ORDERED.**

Dated:   New York, New York
         1 March 2021

_____
                    Victor Marrero
                    U.S.D.J.