# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

1:17-cv-06261-VM-VF

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of July, two thousand twenty-two,

Before:     John M. Walker, Jr.,
            Robert D. Sack,
            Susan L. Carney,
                *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 19 2022

International Code Council, Inc.,

          Plaintiff-Counter-Defendant-Appellant,

American Society of Civil Engineers,

          Plaintiff,

v.

UpCodes, Inc.,

          Defendant-Counter-Claimant-Appellee,

Garrett Reynolds, Scott Reynolds,

          Defendants-Appellees.

**JUDGMENT**

Docket Nos. 21-826(L),
21-827(Con)

The appeal in the above captioned case from an order of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the decision and order of the District Court is AFFIRMED IN PART, REVERSED IN PART and REMANDED for further proceeding consistent with this Court's opinion.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 08/19/2022

21-826 (L)
*Int'l Code Council v. UpCodes*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2021

(Argued: October 13, 2021      Decided: July 29, 2022)

Docket Nos. 21-826, 21-827

―――――――――――――

INTERNATIONAL CODE COUNCIL, INC.,
*Plaintiff–Counter-Defendant–Appellant*,

AMERICAN SOCIETY OF CIVIL ENGINEERS,
*Plaintiff*,

v.

UPCODES INC.,
*Defendant–Counter-Claimant–Appellee,*

GARRETT REYNOLDS, SCOTT REYNOLDS,
*Defendants-Appellees.*

―――――――――――――

Before:      WALKER, SACK, AND CARNEY, *Circuit Judges*.

International Code Council, Inc. ("ICC"), a nonprofit organization that develops model building codes and standards, sued a for-profit competitor, UpCodes, Inc., for false advertising and false statements in violation of the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law §§ 349 and 350-a, and New York's common law of unfair competition.  ICC alleges that UpCodes falsely asserted that its codes were always up to date, that its codes integrated all amendments enacted by local jurisdictions, and that it was the sole provider of such integrated amendments.  The United States District Court for the Southern District of New York (Marrero, *J.*) *sua sponte* and without notice converted the parties' pre-motion letters into a motion to dismiss and a response, and then granted that motion.  On appeal, we conclude that the district court erred by failing to provide ICC with notice and an opportunity to fully defend the sufficiency of its complaint.  However, because the parties have fully briefed

the legal issues presented on appeal and we review a dismissal for failure to state a claim *de novo*, we reach the merits and reverse on nearly all grounds. We conclude that ICC adequately pled falsity as to UpCodes's assurances of accuracy, statements regarding integration of all amendments, and assertions of unique services. We also conclude that ICC sufficiently alleged the materiality of the challenged statements. We affirm the district court's decision only to the extent that it dismissed claims premised on UpCodes's promises that its customers would glean a "complete understanding" of relevant code, but we affirm that narrow dismissal on different grounds. We therefore

> AFFIRM IN PART and REVERSE IN PART the district court's decision and order and REMAND for further proceedings consistent with this opinion.

> J. KEVIN FEE (James Hamilton, Raechel Keay Kummer, Jane W. Wise, Jason Y. Siu, *on the brief*), Morgan, Lewis & Bockius LLP, Washington, D.C., *for Appellant*;

> EUGENE NOVIKOV, (Joseph C. Gratz, Ragesh K. Tangri, Catherine Y. Kim, *on the brief*), Durie Tangri LLP, San Francisco, CA, *for Appellees.*

SACK, *Circuit Judge*:

International Code Council, Inc. ("ICC"), a nonprofit organization that develops model building codes and standards, sued a for-profit competitor, UpCodes, Inc., for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), New York General Business Law §§ 349 and 350-a, and New York's common law of unfair competition. ICC alleges that UpCodes falsely asserted that its codes are always up to date, that its codes integrate all amendments

enacted by local jurisdictions, and that it is the sole provider of such integrated

amendments.  The United States District Court for the Southern District of New

York (Marrero, *J.*) *sua sponte* and without notice converted the parties' pre-motion

letters into a motion to dismiss and a response, and then granted that motion.

On appeal, we conclude that the district court erred by failing to provide

ICC with notice and an opportunity to fully defend the sufficiency of its

complaint.  We reach the merits because the pleadings are before us, the parties

have fully briefed all issues raised in the appeal, and we review a grant of a

motion to dismiss *de novo*.  We conclude that ICC adequately pled falsity as to

UpCodes's assurances of accuracy, statements regarding integration of all

amendments, and assertions of unique services.  We also conclude that ICC

sufficiently alleged the materiality of the challenged statements.  We affirm the

district court's decision only to the extent that it dismissed claims premised on

UpCodes's promises that its customers would gain a "complete understanding"

of relevant code, but we do so on different grounds from those relied upon by

the district court.

## BACKGROUND

*Factual Background*

Unless otherwise noted, "[a]ll facts are taken from plaintiff['s] complaint, and because plaintiff[] appeal[s] from an order granting a motion to dismiss, we accept all factual allegations in the complaint as true." *Salazar v. King*, 822 F.3d 61, 68 n.5 (2d Cir. 2016).

ICC is a nonprofit organization that develops model building codes, fire safety codes, plumbing codes, and other similar materials. It publishes updated versions of these codes—known as "International Codes" or "I-Codes"—every three years. Many state and local governments adopt these model codes into their statutes and regulations, establishing them as binding law within their jurisdictions. When a local government adopts an I-Code, it often does not publish the entirety of the code; rather, it codifies the code by reference and then publishes its own amendments. ICC also publishes "Custom Codes" that integrate these amendments into the I-Codes, to reflect the governing law in those jurisdictions. Although the public can view I-Codes free of charge, ICC covers the cost of developing codes by selling physical and electronic copies of the I-Codes and Custom Codes and by offering enhanced services that allow

21-826 (L)
*Int'l Code Council v. UpCodes*

customers to access code commentaries and use tools such as highlighting, bookmarking, and annotation.

In 2016, defendants Garrett Reynolds and Scott Reynolds founded UpCodes, a for-profit company that directly competes with ICC. UpCodes's business model allegedly relies on "selling and giving away unauthorized copies of the I-Codes and the Custom Codes." App'x 27, ¶ 28. UpCodes allegedly charges their subscribers a premium to access versions of ICC's publications with integrated amendments.

As relevant to ICC's claims, UpCodes made three categories of statements on its website and Twitter account about its products: (1) representations relating to the accuracy of the codes available on UpCodes's website, including claims that its codes were "always up to date," App'x 33-34, ¶ 50, and that the website "provides a complete understanding of relevant material," *id.* at 34-35, ¶ 52; (2) statements relating to UpCodes's publication of codes with integrated amendments, including claims such as, "UpCodes hosts the adopted codes as enacted by the state or local jurisdiction," *id.* at 36, ¶ 54; and (3) statements relating to UpCodes being the sole source of codes with integrated amendments,

5

21-826 (L)
*Int'l Code Council v. UpCodes*

including claims that UpCodes is the "only place where all the codes are kept up-

to-date with all the amendments integrated natively into the code," *id.* at 34, ¶ 51.

ICC alleges that these statements were false and misleading. First, ICC

claims that UpCodes's assertions of accuracy were false because its codes

contained significant errors. These alleged errors fall into four categories: (1)

scanning errors; (2) posting non-law, i.e., publishing I-Code material as law

when it had not been adopted; (3) omitting law, i.e., failing to post I-Code

material that had been adopted as law; and (4) failing to integrate various state

and local amendments. Second, ICC claims that UpCodes's statements that it

hosts codes *as enacted* by jurisdictions were false because of the errors relating to

amendment integration. Finally, ICC alleges that UpCodes falsely advertised

that it is the sole provider of integrated amendments when ICC also offers

Custom Codes with integrated amendments.

### Procedural History

On August 17, 2017, ICC filed a separate copyright infringement action

against UpCodes in the United States District Court for the Southern District of

New York, claiming that UpCodes infringed ICC's copyrights by posting the I-

Codes and integrated codes that incorporated the I-Codes by reference. *See Int'l*

21-826 (L)
*Int'l Code Council v. UpCodes*

*Code Council, Inc. v. UpCodes, Inc.*, No. 17 CIV. 6261, 2020 WL 2750636, at *4
(S.D.N.Y. May 27, 2020).  After discovery was completed in that action, ICC
moved for summary judgment, and UpCodes filed a cross motion for partial
summary judgment.  The district court denied both motions in May 2020.

On June 5, 2020, shortly after the denial of summary judgment in the
copyright action, ICC filed this suit against UpCodes and its founders for false
advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), and New York
General Business Law §§ 349 and 350-a, and for unfair competition under New
York common law.  On June 15, 2020, the district court consolidated the false
advertising action with the copyright action for pre-trial purposes only.

Prior to UpCodes's filing of a motion to dismiss and pursuant to Judge
Marrero's published individual practices, the parties exchanged pre-motion
letters—which were limited to three pages by those practices—outlining their
arguments for or against dismissal.  Instead of scheduling the post-letter
conference called for by those same individual practices, however, on March 1,
2021, the district court *sua sponte* and without notice converted the parties' pre-
motion letters into a motion to dismiss and opposition.  Based on those three-
page letters alone and without providing the parties an opportunity to file a

7

motion and response, much less to be heard with full briefing, the court

dismissed ICC's complaint in its entirety.  *See Int'l Code Council, Inc. v. UpCodes,*

*Inc.*, No. 17 CIV. 6261, 2021 WL 1236106 (S.D.N.Y. Mar. 1, 2021).

According to the district court, although ICC had adequately pled that

UpCodes's representations of accuracy and completeness were false, those

statements were "nonactionable puffery" because they were "exaggerated" claims

"upon which no reasonable buyer would be justified in relying." *Id.* at *6-8

(internal quotation marks omitted).  The court further concluded that ICC failed

to plead falsity as to UpCodes's representations regarding integrated

amendments, determining that those claims "are neither literally nor impliedly

false" because ICC conceded that UpCodes's website does include "some but not

all" integrated amendments.  *Id.* at *6.  Finally, the court determined that ICC had

abandoned its claim that UpCodes made false statements about being the

exclusive provider of codes with integrated local amendments.  In their

pre-motion letter, the defendants had argued that ICC did not adequately allege

falsity because one of the statements touting UpCodes as "the only source of

integrated amendments" was limited to "jurisdictions [that] do not provide

integrated code books." *Id.* at *8.  Based on ICC's pre-motion letter, the court

21-826 (L)
*Int'l Code Council v. UpCodes*

determined that "Plaintiff d[id] not respond to this argument," and the court

"consider[ed] it conceded." *Id.*

The court therefore dismissed all of ICC's false advertising claims under

the Lanham Act and New York statutory law and dismissed ICC's New York

common law claims for unfair competition claims because they "mirror the

Lanham Act claims." *Id.* at *9 (internal quotation marks omitted).

## DISCUSSION

On appeal, ICC argues that the district court erred by relying solely on

pre-motion letters and dismissing its complaint without allowing the parties to

brief the issues in the ordinary course. ICC also argues that the district court

erred by holding that UpCodes's promises of accuracy were nonactionable

puffery and by concluding that it failed to adequately plead the falsity of the

other categories of statements. ICC further asserts that it adequately pled the

materiality of challenged statements. For reasons given below, we agree with

ICC on nearly all counts.

### I.    Standard of Review

We review the dismissal of a complaint for failure to state a claim upon

which relief can be granted *de novo*. *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d

9

21-826 (L)
*Int'l Code Council v. UpCodes*

183, 188 (2d Cir. 2020).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  We "accept[] all well-pleaded

allegations in the complaint as true, drawing all reasonable inferences in the

plaintiff's favor."  *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt.

LLC*, 595 F.3d 86, 91 (2d Cir. 2010).  Thus, "[f]act-specific questions cannot be

resolved on the pleadings."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d

162, 185 (2d Cir. 2012) (brackets, citation, and internal quotation marks omitted).

## II.    Dismissal of ICC's Complaint Based on Pre-Motion Letters

The district court erred by *sua sponte* and without notice construing the

parties' pre-motion letters as briefing on a motion to dismiss and granting that

motion.

We have instructed district courts in our Circuit "not [to] dismiss an action

pending before it without first providing the adversely affected party with notice

and an opportunity to be heard."  *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir.

2001); *see also id.* ("[A] *sua sponte* dismissal absent notice and an opportunity to be

heard can itself be grounds for reversal . . . .").  "Unless it is unmistakably clear

10

that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise

defective, we believe it is bad practice for a district court to dismiss" without

notice and "without affording a plaintiff the opportunity to be [fully] heard in

opposition." *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999).

      Although "this Court has occasionally 'approved' the practice of construing

pre-motion letters as the motions themselves . . . under appropriate

circumstances," *Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x

69, 70 (2d Cir. 2019) (summary order) (internal quotation marks omitted), this

case does not present such circumstances.  Panels of this Court have, indeed,

condoned district courts' denials of *non-dispositive* motions based on pre-motion

letters when those letters were sufficiently lengthy to address all relevant

arguments and when there was a clear lack of merit to the arguments supporting

the motion.  *See, e.g.*, *StreetEasy, Inc. v. Chertok*, 730 F. App'x 4, 6 (2d Cir. 2018)

(summary order) (affirming denial of pre-motion letter construed as Rule 60

motion when "the parties offered detailed arguments in pre-motion letters that

evidenced the clear lack of merit in [the appellant's] contemplated motion," and

the appellant could not identify "*any* additional arguments he would have

pressed . . . had he been permitted to file full motion briefs initially"); *In re Best*

*Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (summary order) (affirming

denial of seven-page, single-spaced pre-motion letter construed as sanctions

motion "[g]iven the length and detail of the Pre-motion Letter and responses, and

the clear lack of merit," and noting that the appellant could not identify "any

additional argument it would have made had it filed full motion papers").

*Cf. Griffin v. Sheeran*, 767 F. App'x 129, 132 (2d Cir. 2019) (summary order)

(holding that court "acted outside the scope of its powers" by converting pre-

motion letter into motion to intervene and denying that motion because the case

was "unlike others where this Court has previously approved" of such actions

after "allow[ing] the movant to offer reply letters, exhibits, and/or oral

argument").[1]

The circumstances in which we have found such abbreviated proceedings

appropriate are poles apart from those presented in this appeal.  Here, the court

---

[1] On one occasion, a panel approved this district court's *sua sponte* conversion of a
pre-motion letter and dismissal of a complaint for lack of subject matter
jurisdiction.  *See Mazaya Trading Co. v. Li & Fung Ltd.*, 833 F. App'x 841, 842 (2d
Cir. 2020) (summary order).  That case involved an obvious lack of subject matter
jurisdiction, *see id.* at 842-43; it is well established that courts are obligated to *sua
sponte* consider such a deficiency, *see, e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 141
(2012).

*granted* (rather than denied) a *dispositive* motion; the pre-motion letters were

limited to three pages; and—as indicated by our reversal for the reasons detailed

below—ICC's arguments against dismissal did not clearly lack merit.  As recently

as May of this year, we noted other plaintiffs' "valid concern[s]" that this district

judge's similar actions in another case possibly violated local rules and the

judge's individual practices.[2]  *Grossman v. GEICO Cas. Co.*, No. 21-2789, 2022 WL

---

[2] Local Rule 7.1 provides that "[a]pplications for a pre-motion conference[] and *similar non-dispositive matters* . . . may be brought by letter-motion."  S.D.N.Y. L.R. 7.1(d) (emphasis added).  Moreover, the 2013 Committee Note to Rule 7.1 expressly prohibits moving to dismiss through a letter motion.  *See* S.D.N.Y. L.R. 7.1, 2013 comm. note.  The district judge's individual practices require the defendant, "prior to filing" a motion to dismiss, to "communicate with the plaintiff by letter not exceeding three single-spaced pages . . . setting forth the . . . pleading deficiencies in the complaint."  Individual Practices of U.S. District Judge Victor Marrero § II.B.1 (Feb. 3, 2020).  The plaintiff then is given seven days to respond or seek leave to amend the complaint.  *Id.*  If the parties fail to resolve their disputes through the letter exchange, the district court assures parties that it will schedule a conference "to provide any appropriate preliminary guidance or rulings."  *Id.* § II.B.2.  We see no indication that the court may dismiss the case based solely on these letters without warning; rather, the court's generic practices for all pre-motion letters indicate that *only* "[w]here the circumstances warrant" and "the pre-motion letter contains a sufficient factual and legal statement of the matter at issue," the district court on its own motion "may treat such letter as constituting a motion for the relief request[ed] *and direct that it be filed as such* and that *the parties respond and reply* by letter-briefs of specified lengths."  *Id.* § II.A.2 (emphasis added); *see also Grossman v. GEICO Cas. Co.*, No. 21-2789, 2022 WL 1656593, at *4 & n.4 (2d Cir. May 25, 2022) (summary order) (indicating in similar circumstances that the court violated local rules and judge's individual practices).

1656593, at *4 (2d Cir. May 25, 2022) (summary order); *see also Kapitalforeningen Lægernes Inv.*, 779 F. App'x at 70 (expressing criticism of the fact that "[e]ight months" after filing of pre-motion letter and "without a hearing or further notice to the parties, Judge Marrero construed [defendant's] pre-motion letter as an actual motion and dismissed the . . . complaint," but "essentially treat[ing] [the] district court's failure . . . as a form of harmless error" in light of the obvious deficiencies in the complaint).  Our disapproval of similar practices is longstanding.  *See, e.g.*, *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988) (holding that a "particular [District of Connecticut] district judge" erred by dismissing "five separate . . . cases" "*sua sponte* and without notice to plaintiffs," and commenting that "we [were] troubled by the procedural aspects of these dismissals" (brackets and internal quotation marks omitted)).

　　We reiterate our concern here.  First, parties must be afforded notice that the court is considering dismissal based solely on the arguments presented in pre-motion letters.  As a general matter, a "district court inappropriately dismisse[s]" a case when it does so "without informing plaintiffs it was contemplating such action."  *McGinty*, 251 F.3d at 90 (internal quotation marks omitted).  We have explained that

14

> [n]otice serves several important purposes.  It gives the
> adversely affected party a chance to develop the record
> to show why dismissal is improper; it facilitates *de novo*
> review of legal conclusions by ensuring the presence of
> a fully-developed record before an appellate court; and,
> it helps the trial court avoid the risk that it may have
> overlooked valid answers to what it perceives as defects
> in [the] plaintiff's case.

*Id*. (citations omitted).

Second, by relying solely on three-page pre-motion letters, the district

court denied the "[non-moving party] the opportunity to present [its] best

arguments in opposition." *Perez*, 849 F.2d at 797.  ICC likely understandably

assumed (per local rules and the judge's individual practices) that it would have

the opportunity to fully respond to a formal motion to dismiss.  And, by denying

ICC this opportunity, the district court actually *did* "overlook[] valid answers to

what it perceive[d] as defects in [the] plaintiff's case," *McGinty*, 251 F.3d at 90, as

evidenced by our near total reversal on the merits.  Indeed, with respect to one

question before the court—whether ICC adequately pled that UpCodes falsely

stated that it was the sole source of integrated amendments—the district court

did not permit ICC to present its valid answer, holding instead that ICC

abandoned the claim by omission in a letter it did not know was expected to

contain, in three pages, the entirety of its case.

15

Third, the district court's course of action did nothing to conserve judicial resources. *See Snider*, 199 F.3d at 113 ("[D]enying a plaintiff an opportunity to be heard 'may tend to produce the very effect the court seeks to avoid—a waste of judicial resources—by leading to appeals and remands.'" (quoting *Perez*, 849 F.2d at 797)).

Rather than remand for the parties to submit and the district court to consider a fully briefed motion to dismiss, we reach the merits of ICC's claims. As we have occasionally noted in prior cases, we need not necessarily return the matter to the district court when the parties "have fully briefed all the questions raised on th[e] appeal," "those issues are predominantly of a legal nature" such that we review *de novo*, and "we believe we are adequately informed to decide them." *McGinty*, 251 F.3d at 90; *see also Grossman*, 2022 WL 1656593, at *4; *Kapitalforeningen*, 779 F. App'x at 70. Unlike the district court, which ruled based on six pages of letters outlining some of the parties' arguments, we have received approximately 135 pages of briefs thoroughly and comprehensively arguing the complex legal questions raised on appeal. We have also benefitted from hearing the parties' extensive oral arguments. Finally, we think it is particularly appropriate for us to decide the merits of this case because we reach a

16

substantially different result than did the district court after its abbreviated

proceedings.

## III.    Analysis

A.    <u>The Lanham Act</u>

Section 43(a) of the Lanham Act prohibits the use of any "false or

misleading description of fact" in promotional statements that "misrepresents the

nature, characteristics, [or] qualities" of products or services.  15 U.S.C.

§ 1125(a)(1).[3]  To state a false advertising claim under section 43(a), a plaintiff

must first plausibly allege the falsity of the challenged statement.  *See Merck*

*Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014).  In addition to falsity,

---

[3] "Under New York law, common law unfair competition claims closely resemble
Lanham Act claims except insofar as the state law claim may require an
additional element of bad faith or intent."  *Genesee Brewing Co., Inc. v. Stroh*
*Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) (internal quotation marks omitted).
New York General Business Law Section 349 prohibits "[d]eceptive acts or
practices in the conduct of any business, trade or commerce or in the furnishing
of any service in this state," and Section 350 prohibits "[f]alse advertising in the
conduct of any business, trade or commerce or in the furnishing of any service in
this state."  The elements of each are similar in substance to those of a false
advertising claim under the Lanham Act.  *See Orlander v. Staples, Inc.*, 802 F.3d
289, 300 (2d Cir. 2015) ("To successfully assert a claim under either section, a
plaintiff must allege that a defendant has engaged in (1) consumer-oriented
conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a
result of the allegedly deceptive act or practice." (internal quotation marks
omitted)).

21-826 (L)
*Int'l Code Council v. UpCodes*

the plaintiff must also plausibly allege materiality, i.e., "that the false or

misleading representation involved an inherent or material quality of the

product." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016)

(internal quotation marks omitted). Finally, the plaintiff must plausibly assert

"that the defendant placed the false or misleading statement in interstate

commerce, and that the plaintiff has been injured as a result of the

misrepresentation, either by direct diversion of sales or by a lessening of

goodwill associated with its products." *Merck Eprova AG*, 760 F.3d at 255

(alteration, internal quotation marks, and citations omitted).[4]

B.   <u>Falsity</u>

A plaintiff can demonstrate falsity either by showing: (1) literal falsity, i.e.,

"that the challenged advertisement is . . . false on its face," or (2) implied falsity,

i.e., "that the advertisement, while not literally false, is nevertheless likely to

mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d

Cir. 2010) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d

Cir. 2007)).

---

[4] UpCodes does not appear to contest that ICC adequately alleges that the
statements were placed in interstate commerce or that ICC plausibly pleads an
injury.

18

21-826 (L)
*Int'l Code Council v. UpCodes*

"A message can only be literally false if it is unambiguous." *Church &
Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir.
2016). We have explained that "a district court evaluating whether an
advertisement is literally false must analyze the message conveyed in full
context, i.e., it must consider the advertisement in its entirety and not engage in
disputatious dissection." *Time Warner*, 497 F.3d at 158 (internal quotation marks,
citations and alterations omitted). "A court may find a statement literally false by
necessary implication, without considering extrinsic evidence, when the
advertisement's 'words or images, considered in context, necessarily and
unambiguously imply a false message.'" *Church & Dwight Co.*, 843 F.3d at 67 n.8
(quoting *Time Warner Cable*, 497 F.3d at 148).

On the other hand, an "impliedly false" message "leaves 'an impression on
the listener or viewer that conflicts with reality.'" *Id.* at 65 (quoting *Time Warner*,
497 F.3d at 153). We have warned that "[i]mplied falsity should not be confused
with literal falsity by necessary implication." *Id.* at 67 n.8. Impliedly false
statements can be ambiguous, but their falsity is usually "demonstrated through
extrinsic evidence of consumer confusion or through evidence of the defendant's

19

deliberate deception, which creates a rebuttable presumption of consumer

confusion." *Id.* (citation omitted).

### 1. *UpCodes's statements regarding integrated amendments*

ICC alleges that UpCodes's advertisements and promotional statements

imply that UpCodes's website integrates *all* amendments adopted by a relevant

jurisdiction, but their website actually omits numerous amendments. The

district court dismissed this claim after determining that ICC did not adequately

plead the falsity of these statements. The court held that "[t]he claim that

UpCodes offers integrated amendments is not rendered false by the fact that

'some but not all' amendments are posted." *Int'l Code Council, Inc.*, 2021 WL

1236106, at *6. We disagree and conclude that ICC did adequately allege that

these statements were false.

Accepting ICC's allegations of omitted amendments as true, at least one

statement is facially false. UpCodes describes itself as the "only place where *all*

*the codes* are kept up-to-date *with all the amendments integrated* natively into the

code." App'x 34, ¶ 51 (emphasis added). This statement—with which the district

court did not engage—unambiguously asserts that UpCodes does integrate *all*

amendments for a given jurisdiction. Because the complaint plausibly alleges

that UpCodes failed to incorporate amendments made by some jurisdictions, *see* App'x 29-31, ¶¶ 38-43, ICC adequately pled the falsity of this statement.

We further conclude that the other relevant statements are also literally false as pled because they "necessarily and unambiguously imply a false message." *Time Warner*, 497 F.3d at 148. Statements such as "UpCodes hosts the adopted codes *as enacted* by the state or local jurisdiction" and "UpCodes has integrated the local codes in jurisdiction [sic] like Pennsylvania and New York State," App'x 36-37, ¶ 54 (emphasis added), seem to us to necessarily imply that UpCodes integrates *all* local amendments made in those jurisdictions. The district court's interpretation—that these statements could be understood to promise only that UpCodes integrates *some* of a jurisdiction's amendments (and thus offers incomplete local codes)—is implausible when considered in context.[5]

---

[5] Even if these statements were ambiguous and therefore not literally false, the district court would have erred by ending the inquiry there without properly considering whether they were impliedly false based on allegations of consumer confusion. The court concluded that "the statements regarding amendment integration are . . . [not] impliedly false," *Int'l Code Council, Inc.*, 2021 WL 1236106, at *6, but it did not purport to analyze whether ICC had failed to allege consumer confusion. *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1368 (Fed. Cir. 2013) ("At the pleading stage, plaintiffs need only state that there was confusion and offer facts to support that claim." (internal quotation marks omitted)). We do not reach this issue because ICC adequately pled literal falsity, for which "no

For these reasons, we conclude that ICC adequately pled the falsity of UpCodes's

statements regarding integrated amendments.

### 2. *UpCodes's statements regarding the exclusivity of its services*

ICC alleges that UpCodes falsely stated that it is the "sole" provider of

codes with integrated amendments when ICC also offered some of the same

materials.  In its pre-motion letter, UpCodes argued that its "representation [was]

actually qualified," because "ICC's own screenshot shows that UpCodes claims to

be the only source of integrated codes *only* for 'jurisdictions [that] do not provide

integrated code books.'" *Int'l Code Council, Inc.*, 2021 WL 1236106, at *8 (emphasis

added) (quoting App'x 41, ¶ 63).  UpCodes urged the court to dismiss ICC's

claim "[b]ecause ICC d[id] not allege that the statement *as qualified* is false." *Id.*

(emphasis added).  The district court concluded that ICC had "conceded" the

point "[b]ecause [ICC did] not respond to this argument" in its pre-motion letter,

even though ICC's letter was limited to three pages and the court did not give

ICC notice that its pre-motion letter might be converted to its response to a

motion to dismiss that had not yet been filed.  *Id.*

---

extrinsic evidence of consumer confusion is required." *Time Warner*, 497 F.3d at

158.

Given the opportunity on appeal, ICC now responds. We conclude that it

adequately pled the falsity of UpCodes's statements regarding the exclusivity of

its services. The district court relied on only one of the challenged statements,

which appeared to be qualified, but it did not address other statements in which

UpCodes did not limit its claims to jurisdictions that do not otherwise provide

integrated code books. For example, the complaint challenged the following

statement by UpCodes on its webpage for New York state: "States and cities

enact critical amendments to the base codes. New York State has made

amendment [sic] to the codes. *UpCodes provides the only source to view these*

*amendments integrated into the model codes*." App'x 42, ¶ 64 (emphasis added).

This statement unambiguously asserts that UpCodes is the only entity that

provides integrated amendments for the state of New York. ICC pled that it also

provides Custom Codes, including "New York building codes showing

integrated amendments made by New York." App'x 41, ¶ 64.[6] We conclude that

_____

[6] UpCodes attempts to rebut ICC's argument by introducing extrinsic evidence
that ICC did not offer integrated amendments for one prior iteration of the New
York state building code. We decline to consider this on a motion to dismiss;
UpCodes will have the opportunity to introduce such evidence at a later stage.
Even if UpCodes's allegations were proven, it is not clear that it would render
true its assertion that "UpCodes provides the only source to view [New York
state's] amendments integrated into the model codes," which implicitly

21-826 (L)
*Int'l Code Council v. UpCodes*

ICC has adequately pled that UpCodes's statements necessarily imply the false

message that ICC does not offer integrated amendments.

> 3. *UpCodes's statements regarding accuracy and its guarantees that users will completely understand relevant code*

The district court determined that ICC sufficiently alleged the falsity of

UpCodes's statements that its codes were accurate and up-to-date and that it

provides a complete understanding of relevant material, but the court

nevertheless concluded that those statements were non-actionable puffery.  We

address the accuracy statements and completeness statements separately.  First,

we agree with the district court that ICC alleged the falsity of UpCodes's

accuracy claims, but we disagree that we can, at least at this stage of the

proceedings, conclude that they are puffery.  Second, the district court correctly

determined that UpCodes's statements regarding completeness are non-

actionable puffery, but as explained in section B.3.b. below, we disagree with the

district court's reasons for reaching that conclusion.

> a. **Claims of accuracy**

---

references *all* New York codes, not a specific year's building code.  App'x 42,
¶ 64.

ICC adequately alleges that UpCodes made false statements about the accuracy and comprehensiveness of its products. These statements include claims such as "[a]lways up to date" and "never work from outdated code," and implications that the website contained "all [relevant] code." App'x 33-34, ¶ 50; *id.* at 35, ¶ 52. In another statement made on Twitter, UpCodes doubled down: "ICC says 'UpCodes cannot guarantee that it has the *most accurate*, *up-to-date* information on its website'. How does that make any sense? We are only [sic] place where *all the codes are kept up-to-date* with all the amendments integrated natively into the code." App'x 34, ¶ 51 (emphasis added). We need not decide whether these statements are rendered false by minor, superficial errors; by averring that its codes are completely up-to-date and comprehensive, at the very least, UpCodes "necessarily impl[ies] [the] false message" that its materials are not missing entire sections of code or erroneously publishing material that it had not been enacted as law. *Time Warner*, 497 F.3d at 158. Therefore—accepting the truth of ICC's plausible allegations of UpCodes's errors—ICC has properly pled that UpCodes's statements regarding accuracy are false.

We disagree with the district court that, at this early stage, these accuracy-related statements can be deemed puffery, which would render them non-

actionable under the Lanham Act. *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d

Cir. 1995). Determining whether each of them is puffery requires a factual

inquiry into how users interpreted UpCodes's claims, and we therefore conclude

that the district court erred in dismissing this portion of ICC's false advertising

claim.

We have recognized two forms of puffery: The first encompasses

"[s]ubjective claims about products, which cannot be proven either true or false,"

*Time Warner*, 497 F.3d at 159 (quoting *Lipton*, 71 F.3d at 474). It often manifests as

"exaggeration[s] or overstatement[s]" that mention "nothing specific," but rather

amount to "general claim[s] of superiority" "expressed in broad, vague, and

commendatory language" that are "considered to be offered and understood as

an expression of the seller's opinion only." *Id.* at 159-60 (quoting *Castrol Inc. v.

Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993) and *Pizza Hut, Inc. v. Papa John's

Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000)). The second form of puffery involves

"exaggerated, blustering, and boasting statement[s]" that are *objective*—and

therefore technically provable—but "upon which no reasonable buyer would be justified in relying." *Id.* at 160 (quoting *Pizza Hut, Inc.*, 227 F.3d at 497).[7]

Whether a puffery defense against a false advertising claim can be resolved on a motion to dismiss depends in part on the type of puffery at issue: If the challenged advertisements fall under the *first* form of puffery—subjective statements of opinion which cannot be proven false—then courts treat them as non-actionable puffery as a matter of law. A plaintiff cannot state a false advertising claim based on such a statement because, by definition, it cannot be proven false. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability.");

---

[7] The district court purported to identify *three* types of puffery, splitting the first form of puffery into two: (1) subjective claims about products, which cannot be proven either true or false, and (2) opinion-based exaggerations or overstatements (which the court incorrectly stated *could* be provable). *See Int'l Code Council, Inc.*, 2021 WL 1236106, at *7. In *Time Warner*, we treated these as encompassed by a single definition of subjective, non-provable puffery. *See* 497 F.3d at 159 (referring to both sets of terms collectively as "this definition" and "*Lipton*'s and *Pennzoil Co.*'s definition of puffery"); *id.* at 160 (describing this form of puffery as "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion"). We adhere to our identification of two categories of puffery in *Time Warner*, even though distinguishing between them may be easier in some cases than others. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 496 (2d Cir. 2013) ("[T]he line between fact and opinion is not always a clear one.").

*see also ONY, Inc.*, 720 F.3d at 496 (defining "statements of pure opinion" as "statements incapable of being proven false").

On the other hand, when an advertisement might fall within the second form of puffery—statements that are provable but are so exaggerated that no reasonable buyer would be justified in relying on them—the court must evaluate how a reasonable buyer would react. This often requires extrinsic evidence of consumer impact. *See Time Warner*, 497 F.3d at 158. Such a fact-intensive inquiry typically should not be resolved on a motion to dismiss. In some cases, however, a statement may be technically false but so patently hyperbolic that any allegations that it misled consumers are facially implausible, thereby making the false advertising claim ripe for dismissal on puffery grounds. *See Iqbal*, 556 U.S. at 678; *cf. Fink v. Time Warner Cable*, 714 F.3d 739, 741-42 (2d Cir. 2013) (holding that plaintiffs' claims "lack the facial plausibility necessary to survive a motion to dismiss" and that "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer"). This distinction may be demonstrated by example: If a bubblegum brand advertised that its gum permits chewers to "blow a bubble as big as the moon," the statement would be literally false, but it is facially

implausible that any reasonable buyer could justifiably rely on that claim. A

court could thus dismiss a Lanham Act challenge based upon it. Yet, if the

company falsely advertised that you could "blow a bubble bigger than your own

head," it is plausible that a reasonable buyer could be misled. The statement

*might* qualify as puffery, but only if consumer evidence introduced at summary

judgment or trial showed that "no reasonable buyer would be justified in relying

on it in navigating the marketplace." *Time Warner*, 497 F.3d at 161 (internal

quotation marks omitted).

District court decisions within this Circuit largely follow the foregoing

approach to dismissing such claims. *Compare, e.g., Weight Watchers Int'l, Inc. v.

Noom, Inc.*, 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) (dismissing Lanham Act

challenge to "a claim of superiority that is so vague that any reasonable consumer

would recognize it as an opinion" (internal quotation marks omitted)), *and Davis

v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) ("Courts can determine that

a statement is puffery as a matter of law when the statement does not provide a

concrete representation."), *with, e.g., Verizon Directories Corp. v. Yellow Book USA,

Inc.*, 309 F. Supp. 2d 401, 407-08 (E.D.N.Y. 2004) (denying motion to dismiss false

advertising claim on puffery grounds because "[e]vidence is required on a

motion for summary judgement [sic] or at trial" when it is unclear "how users and advertisers would be affected by [challenged advertisements]"), *and Nasdaq Stock Mkt., Inc. v. Archipelago Holdings*, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (denying motion to dismiss when "puffery defense . . . necessitates a fact-specific determination of whether the advertisements at issue contain an implied falsehood sufficiently specific to mislead the relevant consumers").

UpCodes's claims of accuracy are provable as false; therefore, they could fall under the second form of puffery but only if they are such "exaggerated, blustering, and boasting statement[s]" that "no reasonable buyer would be justified in relying" on them. *Time Warner*, 497 F.3d at 160 (quoting *Pizza Hut, Inc.*, 227 F.3d at 497). UpCodes's assurances that its products are "[a]lways up to date" and that its users will "never work from outdated code" are not so patently hyperbolic that it would be implausible for buyers to rely on them. App'x 33-34, ¶ 50. Rather, it seems to us to be plausible that a reasonable consumer would construe these claims as specific statements about the quality of UpCodes's offerings and understand them to mean that the codes published on UpCodes's website accurately reflect the law. Thus, UpCodes could prevail on its puffery defense only after introducing extrinsic evidence of the statements' effect on

21-826 (L)
*Int'l Code Council v. UpCodes*

consumers on a motion for summary judgment or at trial. Neither we nor the

district court should resolve this fact-intensive inquiry at the pleadings stage.

We are not persuaded by the district court's reasons for reaching the

opposite conclusion. First, the district court relied on out-of-circuit precedents

that "have treated the term[] 'accurate' . . . as puffing language." *Int'l Code*

*Council, Inc.*, 2021 WL 1236106, at *7. But other courts' treatment of a specific

word is of little help unless that word is used in a sufficiently similar context.

Courts "must analyze the message conveyed in full context" and "must consider

the advertisement in its entirety and not . . . engage in disputatious dissection."

*Time Warner*, 497 F.3d at 158 (internal quotation marks omitted).[8] For example,

the term "always" could amount to puffery if it modifies something subjective.

*See, e.g., Dyson, Inc. v. Garry Vacuum, LLC*, No. CV 10-01626 MMM (VBKx), 2011

WL 13268002, at *15 (C.D. Cal. Jan. 4, 2011) (holding that claim that a vacuum

will "always work effectively" is puffery because it "reflect[s] a subjective

---

[8] The parties' briefing similarly engages in a battle of district court precedents, arguing over cases that deal with terms like "all," "100%," and "anywhere." As Judge Jack Weinstein once lamented, "[a]t the level of a motion directed to the pleadings, the extensive citations submitted by the parties to widely disparate cases where the communication was characterized as 'puffery' or 'fact' are almost useless." *Verizon Directories Corp.*, 309 F. Supp. 2d at 407. These precedents are largely unhelpful because we must consider the terms in context.

31

evaluation of effectiveness that cannot be measured or quantified").  And the

term "up to date" could be subjective when used as a comparator or superlative

(e.g., "more up to date" or "most up to date").  *See, e.g., TSI Prods., Inc. v. Armor*

*All/STP Prods. Co.*, No. 3:17-CV-1131 (MPS), 2019 WL 4600310, at *11 (D. Conn.

Sept. 23, 2019) ("Courts have also been skeptical of superlatives in creating

actionable statements of false advertising.").  But UpCodes did not advertise that

its codes were "always helpful" or "the most up to date"; UpCodes claimed that

its products were "<u>always</u> <u>up to date</u>."  App'x 33-34, ¶ 50 (emphasis added).  We

do not see how such a statement can be anything other than an explicit claim

about the quality of its products.

Second, the district court understated the errors alleged by ICC when it

decided that that "'no reasonable buyer' would take UpCodes's representations of

accuracy and completeness to mean that the codes are instantaneously updated

and at all times error free" because "[a]s changes in law occur, some delay

between the adoption of those changes . . . and their publication on the UpCodes

website is not only understandable, but expected."  *Int'l Code Council, Inc.*, 2021

WL 1236106, at *8.  That may be true, but ICC did not allege that UpCodes's

representations of accuracy statements are false because UpCodes was slow to

update newly enacted codes. Rather, the complaint alleges that the codes were riddled with blatant errors, such as publishing the entire "text of ICC's model International Residential Code 2015 as the 'Residential Code 2015 of Wyoming' even though Wyoming has not incorporated the entire International Residential Code 2015," App'x 28, ¶ 34, and publishing eleven code appendices as part of the Building Code 2015 of Wyoming and two code appendices as part of the Wyoming Fire Code even though Wyoming had never adopted those appendices. App'x 29, ¶¶ 36, 37. While it might be unreasonable for a consumer to think that UpCodes instantaneously updated every code as it was revised, one could reasonably believe based on UpCodes's representations that its website would not include obvious omissions and inaccuracies such as these.

Finally, we disagree with the district court that a disclaimer on Upcodes's website can shield the defendants from liability at this early stage. The district court noted that the website "expressly disclaims liability for 'any errors or omissions in the information or content' on its website," which, according to the court, further indicates that the website's statements of accuracy and completeness are mere puffery. *Int'l Code Council, Inc.*, 2021 WL 1236106, at *8 (quoting App'x 32-33, ¶ 47). Although "under certain circumstances, the

presence of a disclaimer or similar clarifying language may defeat a claim of

deception," *Fink*, 714 F.3d at 742, the sufficiency of UpCodes's disclaimer

depends upon its effect on consumers, which raises factual questions that are not

well suited for resolution on a motion to dismiss. *See, e.g.*, *Consumers Union of*

*U.S., Inc. v. New Regina Corp.*, 664 F. Supp. 753, 772 (S.D.N.Y. 1987) ("The

adequacy of a disclaimer . . . presents an issue of fact."). UpCodes notes that, in

at least one case, the Ninth Circuit relied on a disclaimer at the motion-to-dismiss

stage to find that consumers would not be deceived by a challenged statement.

That case, however, presented unusual circumstances: the disclaimer appeared

in the *same sentence* as the allegedly deceptive words and used language that was

so clear "that no reasonable addressee could believe" the plaintiffs' allegations of

being misled. *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995). UpCodes's

generic disclaimer is thus easily distinguishable.

We conclude that the district court erred in dismissing this subset of claims

because ICC adequately pled that UpCodes's statements regarding accuracy are

false and, at this stage of the proceedings, UpCodes cannot demonstrate that

those statements are nonactionable puffery.

b. **Claims of completeness**

ICC also challenged UpCodes's statements that its website provides "a complete understanding of relevant material."  App'x 34-35, ¶ 52.  The district court determined that ICC adequately alleged falsity but concluded that such statements fell under the *second* type of nonactionable puffery "because they are exactly the type of 'exaggerated' and 'boasting' statements 'upon which no reasonable buyer would be justified in relying.'"  *Int'l Code Council, Inc.*, 2021 WL 1236106, at *7 (quoting *Time Warner*, 497 F.3d at 160).[9]  We agree with the district court's ultimate determination that these advertisements qualify as nonactionable puffery but for a different reason: They are subjective statements of UpCodes's opinion.

As we have noted, a statement is nonactionable puffery if it makes "[s]ubjective claims about products, which cannot be proven either true or false."  *Time Warner*, 497 F.3d at 159 (quoting *Lipton*, 71 F.3d at 474).  Whether users could glean a "complete understanding of relevant material" from UpCodes's

---

[9] The district court's analysis of these claims appears to be facially inconsistent. In the same paragraph, the court concluded that ICC had "adequately pled falsity" as to UpCodes's completeness statements, and then it cited a district court opinion for the proposition that "advertising terms like 'complete' are puffery because they are subjective and cannot be proven true or false.").  *Int'l Code Council, Inc.*, 2021 WL 1236106, at *7 (quoting *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D.N.Y. 2009)).

21-826 (L)
*Int'l Code Council v. UpCodes*

website is immeasurable and subjective.  App'x 34-35, ¶ 52.  That is, even if

UpCodes provided entirely accurate materials, whether any individual could

"[u]nderstand all code relevant to [her] project" depends on the cognitive abilities

of the user and the nature of the project.  App'x 35, ¶ 52.  These statements,

which are "expressed in broad, vague, and commendatory language," should be

"understood as an expression of the seller's opinion only."  *Time Warner*, 497 F.3d

at 159 (quoting *Pennzoil Co.*, 987 F.2d at 945).  False advertising claims

challenging this type of puffery are appropriately resolved at the pleadings stage.

We therefore affirm the dismissal of ICC's claims challenging this limited set of

statements.

C.     Materiality

       The district court did not address whether UpCodes's allegedly false

statements were material.  Now that the issue has been fully briefed by the

parties on appeal, we conclude that ICC adequately alleges materiality.

       In addition to pleading falsity, ICC must also plausibly allege "that the

false or misleading representation involved an inherent or material quality of the

product."  *Apotex Inc.*, 823 F.3d at 63 (internal quotation marks omitted).  In other

words, the allegedly false statement must be "likely to influence purchasing

36

decisions." *Id*. (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855

(2d Cir. 1997)). We have declared that plaintiffs "should be given the

opportunity to develop their evidence" to demonstrate materiality. *See Nat'l*

*Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys*, 850 F.2d 904, 917 (2d Cir. 1988). And

we have explained that the question of "whether or not [consumers] construed" a

statement as material generally "cannot be determined on consideration of a

motion to dismiss." *Id*.[10]

ICC's allegations that UpCodes's false statements were "likely to influence

purchasing decisions" are plausible, App'x 44, ¶ 75, particularly because nearly

all the challenged statements either assure the accuracy of complex legal codes,

promote a central feature of UpCodes's business (i.e., the integration of local

amendments), or imply that ICC offers inferior services. Therefore, we conclude

---

[10] UpCodes argues that ICC should be held to a higher pleading standard, based
on a district court decision that stated plaintiffs need to "*offer facts* to support
[their] claim" that "consumers or retailers were misled or confused by the
challenged advertisement." Appellees' Br. at 50 (quoting *Lokai Holdings LLC v.
Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018)). But that
requirement belongs to the unrelated *implied falsity* analysis, which requires that
plaintiffs plead sufficient facts to support a finding that consumers were
confused or misled by a statement that is not literally false. The materiality
inquiry separately analyzes whether that confusion (or, in this case, whether the
statements' literal falsity) related to an inherent quality of the product, such that
they would influence consumers' purchasing decisions.

21-826 (L)
*Int'l Code Council v. UpCodes*

that ICC pled sufficient facts to demonstrate materiality for the purpose of

surviving a motion to dismiss.

## CONCLUSION

Although we decide that the district court erred by *sua sponte* and without

notice construing the parties' pre-motion letters as briefing on a motion to

dismiss and granting that motion, in light of the unusual circumstances of this

appeal, we are able to reach the merits of the motion to dismiss based on the

appellate briefing.  We conclude that the district court erred by granting the

defendants' motion to dismiss in its entirety:  ICC adequately pled falsity as to all

of the challenged statements except those suggesting that users will obtain a

"full" or "complete understanding" of relevant code from UpCodes's website.

The statements claiming completeness are nonactionable puffery and therefore

we affirm the dismissal of ICC's claims to the extent they are premised on them.

ICC's complaint sufficiently alleges, for the purpose of surviving a motion to

dismiss, that the remaining challenged statements are material.

We have considered the defendants' remaining arguments on appeal and

conclude that they are without merit.  For the reasons explained above, we

AFFIRM IN PART and REVERSE IN PART the district court's decision and order

21-826 (L)
*Int'l Code Council v. UpCodes*

and REMAND for further proceedings consistent with this opinion.