

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

July 12, 2023

Hon. Valerie Figueredo, U.S.M.J.
United States District Court, S.D.N.Y.
500 Pearl St.
New York, NY 10007-1312

Re:   *ICC v. UpCodes, Inc. et al., Case No. 1:17-cv-6261-VM-VF*

Dear Judge Figueredo:

ICC submits the following response to Defendants letter motion (Dkt. 172). Defendants' motion should be denied because their discovery requests are strikingly overbroad, exceedingly burdensome, irrelevant, and not proportionate to the needs of the case.

**I. Requests 2, 3, and 8 seek irrelevant information regarding ICC's free online services.**

It is undisputed that ICC makes it codes available for viewing for free on its website. Any relevant information regarding the reading room can observed there. UpCodes' request for additional, non-public information is irrelevant and disproportionate to the needs of this case.

*Request 2* seeks "[a]ll documents relating" to the free online services through which ICC codes can be accessed. Although UpCodes has included Request 2 in the "requests at issue," it has set forth no argument in its motion explaining its basis to compel ICC to produce these documents and should not be permitted to do so now. Nonetheless, UpCodes' request for all documents relating to the reading room since 2017 encompasses countless irrelevant document and is unduly burdensome. By way of example, any invoice related to hosting the reading room on servers and internal communications about which ICC employee would post materials on the reading room would be responsive but clearly irrelevant.

*Request 3* seeks "[a]ll documents relating" to ICC's decision to offer its codes to the public for free. UpCodes argues all such documents bear on the fourth fair use factor – "the effect of the [copying] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). They do not. The fourth fair use factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Fox News Network, LLC v. TVEyes, Inc.,* 883 F.3d 169, 179 (2d Cir. 2018) (quotations and citations omitted). UpCodes' copies either are substitutes for or are derivatives of ICC's works or they are not, and ICC's internal decision-making process related to its reading room sheds no light on these questions.[1] Moreover, ICC's reading room is read-only,

---

[1] *Whiddon v. Buzzfeed, Inc.,* No. 22-cv-4696 (CM), 2022 WL 16555584 (S.D.N.Y. 2022), does not suggest otherwise. There, the plaintiff's "willingness to share photographs with a potentially massive group of people" on a platform "premised on freely sharing images" was probative insofar as it "cut[] against any suggestion that she had

whereas UpCodes' copies are not so limited.  Therefore, ICC's beliefs regarding the impact of its read-only reading room on the market for its codes do not shed any light on whether UpCodes' free and unrestricted copies would adversely impact the market.

*Request 8* seeks "[a]ll documents" relating to consumer feedback with respect accessing ICC's reading room.  Magistrate Judge Freeman already considered and rejected UpCodes' argument that this type of information was relevant to its "due process" defense, explaining that "I don't really think it's an issue that [ICC] limit[s] in certain ways, and I can see limits in certain ways what you can access.  [ICC] freely admits that they do, and the website shows what it shows.  So if you say you can't download it, it's like, okay, you can't download." (Dkt. 48 at 79:13-22).  ICC offers copies of its codes, free to view to the public.  UpCodes can critic the ease of use of ICC's offerings and prove that the reading room does not permit copying or printing by reference to the reading room itself.  UpCodes does not need any additional documents from ICC.  Moreover, even if ICC had any responsive documents, one-off comments from individual users cannot be extrapolated to represent a substantial portion of users of ICC's reading room.  If UpCodes seeks evidence regarding consumer perceptions regarding the ease of use of ICC's reading room, then it needs to perform a properly designed consumer survey.

Finally, these requests are not satisfied with searches that ICC has already agreed to run.  ICC only agreed to conduct a limited search of consumer communications regarding errors in ICC's codes pursuant to the Court's order concerning consumer communications, which are unlikely to yield feedback regarding ease of access.  (*See generally* Mar. 2, 2023 Discovery Conf. Tr.).

## II. Requests 15 and 17 seek irrelevant communications with external entities regarding the nature and extent of copyright protection in ICC's codes.

*Request 15* seeks "[a]ll communications with any external entity regarding the nature and extent of copyright protection in" ICC's codes.  UpCodes argues that such communications are relevant to "the purpose and character of the use" and "the nature of the copyrighted work" insofar as such communications reveal ICC's subjective belief regarding the extent of copyright protection in ICC's works.  However, as the Supreme Court recently made clear, the purpose and character of the use is assessed objectively. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,* 143 S. Ct. 1258, 1284 (2023) ("Whether the purpose and character of a use weighs in favor of fair use is, instead, an objective inquiry into what use was made, *i.e.*, what the user does with the original work.").  ICC's subjective views on copyright protection are irrelevant.  Similarly, the nature of ICC's works does not change based on ICC's subjective beliefs.  The nature of those works is apparent on their face.  Neither factor justifies burdensome discovery into ICC's irrelevant communications with *any* external entity on issues relating to copyright.

*Request 17* seeks "[a]ll documents and communications relating to lobbying efforts, including communications with lobbyists, regarding adoption of" ICC's codes.  UpCodes argues that this request seeks documents relevant to establishing whether ICC "explicitly encourages jurisdictions to adopt the codes as law."  However, Request 17 is not so limited.  Request 17 requires ICC to search for documents unrelated to the adoption of ICC's codes, and those documents are not

---

plans to commercialize the Photographs" at issue.  *Id.* at *9-10.  ICC's undisputedly sells copies of its codes and has done so for decades.

relevant to the claims and defenses at issue and not proportionate to the needs of this case. If this Request was limited to documents sufficient to show "whether [ICC] intended or encouraged the work's adoption into law*,*" *Int'l Code Council, Inc. v. UpCodes, Inc.*, 2020 WL 2750636, at *16 (S.D.N.Y. May 27, 2020), ICC would be willing to produce responsive documents.

UpCodes' also argues that Requests 15 and 17 seek communications relevant to establishing whether UpCodes' infringement was willful. However, there has been no allegation in this case that UpCodes relied on or was aware of ICC's subjective beliefs regarding the nature and extent of copyright protection in ICC's codes when UpCodes' infringement began.[2] As a result, ICC's communications are irrelevant to UpCodes' state of mind. UpCodes' reliance on *Scanlon v. Kessler*, 11 F. Supp. 2d 444 (S.D.N.Y. 1998), is misplaced. In *Scanlon*, "[s]ince the defendants did remove some of Scanlon's photographs from the Internet site, it is reasonable to conclude that the failure to remove the remaining two photographs was due to confusion about which photographs were taken by Scanlon" as "[s]ignificantly, plaintiff's complaint did not contain copies of the photographs at issue." *Scanlon* 11 F. Supp. 2d at 448. Here, there is no ambiguity about which works ICC is alleging are protected by copyright, and ICC's internal communications regarding copyright protection has no bearing on UpCodes' "reasonable" beliefs.

### III.  *Request 18 seeks irrelevant documents regarding a lawsuit to which ICC is not a party.*

*Request 18* seeks "[a]ll documents and communications" relating to *NFPA v. UpCodes, Inc., et al.,* No. 2:21-cv-5262 (C.D. Cal.) ("*NFPA*"). UpCodes has set forth no legal basis or argument for why all of ICC's documents and communications regarding *NFPA*, a litigation to which ICC is not a party, has any bearing on the claims and defenses at issue in this litigation. It should not be permitted to raise new arguments now, and this portion of UpCodes' motion should be denied.

### IV.  *Request 19 seeks irrelevant documents related to the Pro Codes Act, proposed legislation that has no relation to the claims or defenses at issue in this litigation.*

*Request 19* seeks "[a]ll documents and communications" related to the Pro Codes Act or similar legislative proposals. If enacted, the Pro Codes Act would require Standards Developing Organizations ("SDOs") to display codes "for review in a readily accessible manner on a public website" "at no monetary cost." *See* https://www.congress.gov/bill/118th-congress/senate-bill/835/text. The Pro Codes Act would not require ICC to change its reading room to make its codes available for unrestricted copying and printing, similar to UpCodes' offering. Thus, the Pro Code Act will not impact the marketplace for ICC's works and is any discussion about it is irrelevant to question of whether UpCodes' unrestricted copies will do so. ICC made the decision to make its codes available for viewing in a free reading room many years ago, and, as explained above and confirmed by Judge Freeman, that decision-making process is not relevant to the claims and defenses at issue. (Dkt. 48 at 79:4-25).

*                *                *

For all the foregoing reasons, the Court should deny Defendants' motion to compel ICC to produce documents in response to Requests 2, 3, 8, 15, and 17-19.

---

[2] ICC has continuously maintained that it possesses copyright protection in its codes.

Respectfully submitted,

*/s/ Jane W. Wise*

Jane W. Wise