

**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
www.dlapiper.com

December 5, 2023
*Via* ECF

Hon. Valerie Figueredo, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Re:   *ICC v. UpCodes, Inc. et al., Case No. 1:17-cv-6261-VM-VF*

Dear Judge Figueredo:

Pursuant to Your Honor's Individual Practices in Civil Cases § II(c), ICC submits this Letter-Motion for a Discovery Conference.

## I.     Background of Dispute

As relevant to this dispute, ICC served a request for production which seeks "[d]ocuments sufficient to show a static version of the UpCodes Website on January 1 and July 1 of each year since the adoption of the first Advertising Claim." *See* Declaration of Jane W. Wise ("Wise Decl.") ¶ 2, Ex. 1 at No. 10.  UpCodes objected to this Request as "overbroad and unduly burdensome" and offered to "make itself available to meet and confer regarding the scope of this request." *Id*.  In the parties' initial Copyright dispute, Case No. 1:17-cv-6261-VM-VF ("Copyright I"), Judge Marrero made explicitly clear that a record of UpCodes' static website is necessary to ICC's case.  As Judge Marrero explained, without a static website record there is "no way to verify the full contents of Current UpCodes, which is continually being updated with potentially erroneous codes in any event." Dkt. No. 105 at 62.  Indeed, the Court found that "[u]nless the parties can establish a static and limited version of Current UpCodes for future consideration, much as they already have for Historic UpCodes, it is unclear how Defendants can demonstrate with sufficient clarity that what they actually post embodies only the law." *Id*.  Here too, without a sufficient record, the parties will be unable to establish the accuracy of the content on UpCodes' website.

The parties met and conferred on multiple occasions, and ICC made clear it was amenable to a compromise limiting UpCodes' burden while also accommodating ICC's need for the relevant information.  On one such occasion, ICC requested a meeting between the parties' technical teams to evaluate whether UpCodes' estimate of active work time was reasonable.  Counsel for UpCodes declined, stating that doing so was not necessary.  While UpCodes maintains it will take weeks of active engineering time to produce static versions of its website for multiple points during the relevant time period, it was able to produce a static version of its website in response to ICC's document requests in Copyright I.  Further, ICC has proposed multiple solutions to alleviate UpCodes' burden.  For example, ICC proposed limiting the number of captures provided UpCodes agreed to a stipulation limiting the evidentiary universe to only those captures.  As UpCodes is the *only* party capable of reconstructing the UpCodes website at previous points in time, without such a stipulation, UpCodes would be free to dispute the length of time that any errors appeared on its

December 5, 2023
Page Two

website and ICC would be left with no recourse to establish how long a version of the code remained live on the UpCodes website. UpCodes would not agree to this proposal and wanted to preserve its ability to rely on website captures that it refused to produce in discovery. To date, UpCodes has only agreed to produce *one* historical capture of the UpCodes' website from January 1, 2018 to present.

Separately, in connection with its Copyright II claims, ICC propounded Request No. 63 for "[d]ocuments sufficient to identify UpCodes' customers, target customers, or prospective customers." UpCodes objected to "producing personal identifying information of its users" on the grounds of relevancy, proportionality, and confidentiality. Wise Decl. ¶ 3, Ex. 2. On October 19, 2023, the parties met and conferred, and UpCodes maintained that it would be technically burdensome to produce user information limited to those who had accessed ICC codes. ICC explained that its request was not so limited, and thereafter UpCodes indicated that it would not produce any customer lists.

    II.    <u>Argument</u>

**Request for Static Websites:** Where, as here, the discovery sought is electronically stored information ("ESI")[1], "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost'" to avoid its production. *Thomas v. City of New York*, 336 F.R.D. 1, 2 (E.D.N.Y. 2020) (quoting Fed. R. Civ. P. 26(b)(2)(B)). Courts will compel the production of copies of websites where such contents are relevant and may contain evidence pertinent to the live issues of the case. *See Huseby, LLC v. Bailey*, 2021 WL 3206776, at *14 (D. Conn. July 29, 2021) (granting motion to compel "Defendants to produce 'a current copy and any prior versions or cached copies of your website(s)'" as it would "likely show their service areas and may contain evidence on the particular entity for which [Defendant] worked" in an employment dispute.)

Here, there can be no doubt that the information requested by ICC, *i.e.*, UpCodes' website, is highly relevant to ICC's false advertising claim based on UpCodes' false and/or misleading claims regarding the accuracy of its website content. Indeed, as Judge Marrero made clear, "establish[ing] a static and limited version" of UpCodes' website is necessary to establish whether UpCodes' website content, which is constantly updated, is accurate as advertised. Dkt. No. 105 at 62. Even though the content of UpCodes' website is at the heart of ICC's copyright and false advertising cases, UpCodes maintains that the burden associated with ICC's request is not proportionate to the needs of the case. Although the collection of such discovery may be somewhat costly, when there is no less burdensome way to collect highly relevant information, courts will find such discovery proportional to the needs of the case. *See e.g., State Farm Mut. Auto. Ins. Co. v. Fayda,* 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (proportionality argument failed because discovery, although costly, was relevant to the case and plaintiff had no alternative source for the information.). Further, although UpCodes has maintained that it would takes weeks of engineering time to create these captures, it declined to consider or discuss with a vendor the feasibility of vendor-assisted collection for this process.

---

[1] *See Leidig v. Buzzfeed, Inc*., 2017 WL 6512353, at *8 ("The websites, metadata, and emails all constitute ESI.")

December 5, 2023
Page Three

During meet and confers, UpCodes attempted to flip the burden of producing static captures of UpCodes' website on ICC.  ICC attempted to create its own static version of UpCodes' website however, ICC was unable to recreate a workable version given the dynamic nature of UpCodes' website.  Separately, it would be costly for ICC to engage a vendor to do so.  Indeed, it would cost nearly $10,000 for ICC to create a *single* capture of UpCodes' complete website content. [2]  Wise Decl. ¶ 4, Ex. 3.  Additionally, UpCodes cannot claim the burden of its own storage system as a prejudicial factor for the collection of its website content.  *Malzberg v. New York Univ.*, 2020 WL 3618962, at *4 (S.D.N.Y. July 2, 2020) ("to the extent that Defendant's burden is a function of its own record-keeping, that factor that should not prejudice Plaintiff's ability to obtain clearly relevant information.").  This is particularly true because Judge Marrero placed UpCodes on notice more than 3 years ago that static versions of its website would be essential to the adjudication of the parties' claims, yet UpCodes chose not to store website code in an easily accessible manner.

**UpCodes' Customer Lists**: Information related to UpCodes' customers is crucial to ICC's theories of irreparable harm and damages and to rebut UpCodes' fair use defense.  To establish whether consumers have switched from ICC's services to UpCodes' and to understand the extent of harm UpCodes' copying continues to have on the market for ICC's works for the purpose of assessing fair use, 17 U.S.C. § 107(4), ICC must be able to compare the parties' customer lists.  There is no question that customer lists are relevant to copyright cases, and courts routinely compel their production.  *See e.g., BSN Med., Inc. v. Parker Med. Assocs., LLC,* 2011 WL 197217, at *3 (S.D.N.Y. Jan. 19, 2011) (compelling production of defendant's customer lists as "the only way to accurately calculate the amount of sales [Plaintiff] has lost to [Defendant] is to track individual customers' purchasing history.")  UpCodes has objected on two main grounds (1) the technical feasibility of limiting customers to only those who have accessed ICC codes via UpCodes and (2) confidentiality.  UpCodes should produce all customer information notwithstanding whether or not said customers actually accessed ICC's codes given that the centrality of ICC's codes to UpCodes' offerings.  For years, UpCodes displayed *only* ICC's works.  78 out of 79 jurisdiction-specific building codes currently available on UpCodes' Website include at least one I-Code or custom code, with most containing multiple ICC works.  See https://up.codes/codes/general.  Given the pervasiveness of ICC's works on UpCodes' website, even if a customer did not access ICC's codes, it cannot be fairly said whether or not the availability of ICC's works was or was not a motivating factor in the customer's purchase.  This would also relieve UpCodes of the technical burden associated with segregating customers.  Separately, as there is a two-tier protective order already in place that protects highly confidential information such as customer lists, UpCodes cannot use confidentiality as a basis refuse to produce documents.  *See Asch/Grossbardt Inc. v. Asher Jewelry Co.*, 2003 WL 660833, at *3 (S.D.N.Y. Feb. 28, 2003).  UpCodes should be compelled to produce this relevant data notwithstanding its confidential nature.

For the reasons set forth above, ICC respectfully requests this Court compel UpCodes to produce documents responsive to ICC's Request Nos. 10 (static website versions) and 63 (customer lists).

---

[2] As noted above, UpCodes refused to make its technical team available to discuss the burden of UpCodes' collection.  ICC has thus not been able to investigate any claimed financial burden posed by UpCodes' collection of its *own* website content, other than "active" engineering time.

December 5, 2023
Page Four

Sincerely,

*Jane W Wise*

Jane W. Wise

CC: All counsel of record

> **SO ORDERED**
>
> *Valerie Figueredo*
>
> VALERIE FIGUEREDO
> United States Magistrate Judge
> **Dated:** December 7, 2023
>
> A conference in this matter is hereby scheduled for **January 9, 2024, at 2:30 p.m.** The parties are directed to submit any additional briefing related to this matter by January 4, 2024. Counsel for the parties are directed to call Judge Figueredo's AT&T conference line at the scheduled time. **Please dial (888) 808-6929; access code [9781335].** The Clerk of Court is respectfully directed to terminate the motion at ECF No. 191.