

**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
www.dlapiper.com

Jane W. Wise
jane.wise@us.dlapiper.com
T   202.799.4149
F   202.863.7849

August 4, 2025
*VIA ECF*

The Honorable Valerie Figueredo
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

**Re:**    *International Code Council, Inc. v. UpCodes, Inc. et al.* **– Consolidated Case Nos. 1:17-cv-6261, 1:20-cv-04316, and 1:22-cv-10815**

Dear Magistrate Judge Figueredo:

Pursuant to Your Honor's Individual Practices in Civil Cases § II(c), ICC submits this Letter-Motion for a discovery conference.

### I.    Background of the Dispute

This letter addresses ICC's request to serve limited subpoenas on UpCodes' customers.

As Your Honor may recall, ICC previously propounded Request No. 63 for "[d]ocuments sufficient to identify UpCodes' customers, target customers, or prospective customers." UpCodes objected to producing this information on the grounds of relevancy, proportionality, and confidentiality. Exhibit A. Your Honor heard a motion to compel this information on January 29, 2024 (Dkt. No. 202) and ordered UpCodes to produce its customer list to ICC. In doing so, Your Honor directed the parties to attempt to reach an agreement as to the nature and scope of the communications before ICC served any additional subpoenas on those customers. Jan. 29, 2024 Hearing Tr. at 45: 18-45:25.

Per the Court's order, ICC reached out to UpCodes in an attempt to reach an agreement regarding the scope of the subpoenas it intended to serve on additional UpCodes customers. The parties met and conferred, most recently on August 4, 2025, but have been unable to reach a resolution.

After UpCodes provided its customer list, identifying almost nine thousand customers, ICC proposed serving subpoenas on approximately sixty to seventy of UpCodes' customers, or less than 1%, of those identified on the customer list. ICC has further offered to (i) limit the scope of the requests to



August 4, 2025
Page Two

topics that Your Honor recently found to be relevant and proportionate to the needs of the case:[1]; (ii) provide the language of the requests to UpCodes before issuing any subpoenas; and (iii) work with subpoenaed parties to find a way to address valid burden objections, such as a sworn declaration from each customer detailing where the customer previously purchased codes from and the reason(s) the customer decided to license, purchase, or otherwise use UpCodes copies of codes in lieu of a document production.  Exhibit B.

In response, and subsequent to the Court's Order, UpCodes reasserted that ICC is not entitled to seek any further discovery from its customers and has stated only that it is "willing to discuss procuring declarations" only "[i]f ICC identifies **no more than [five] customers** for which it has a good faith basis to believe possesses unique and relevant information."  Ex. C.

In the January 29, 2024 hearing, the Court agreed that the information sought by ICC through the proposed customer subpoenas is "certainly relevant to ICC's damages and harm argument" and that "any burden or argument [against ICC's third-party subpoena] on that front should be made by the individual that's subpoenaed." Jan. 29, 2024 Hearing Tr. at 33:16-24; 44:4-44:13. But UpCodes has proven unwilling to accept that.

## II.    Argument

ICC must be able to serve subpoenas on UpCodes' customers to establish that consumers have switched from ICC's services to UpCodes' and to understand the extent of harm UpCodes has caused to the market for ICC's works for the purpose of assessing ICC's damages and copyright fair use, 17 U.S.C. § 107(4).

Your Honor required that the parties meet and confer on the "nature of the communications" ICC intends to have with UpCodes' customers before sending any subpoenas.  ICC has done so.  In March 2024, ICC identified five categories of documents it intended to seek from the subset of UpCodes' customers it may subpoena.  This was reiterated to UpCodes in July 2025, but UpCodes refused to agree.  Regardless, the Court already found that ICC's proposed subpoena requests are relevant despite UpCodes' continued disagreement, *see* Jan. 29, 2024 Hearing Tr. at 33:16-24.

ICC needs the requested information from more than five customers so that it can at least have a reasonable and representative sample of the harm that ICC has suffered due to UpCodes' conduct.  If

---

[1] *See International Code Council, Inc., v. Skidmore, Owings & Merrill, LLP*, Case No. 1:24-mc-00412-JHR, Dkt.No. 20 (compelling the production of (1) Documents and/or communications sufficient to show purchases of codes and/or standards from ICC and/or any Third Party; (2): All contracts, including licensing agreements, between the customer and UpCodes; (3): All Documents and/or communications concerning the customer's decision to license, view, access, copy, or purchase any codes or standards from UpCodes; (4): All Documents and communications regarding whether codes on the UpCodes website are accurate, complete, and/or up-to-date; and (5):All communications between the customer and any Defendant regarding legal risks associated with UpCodes' business or business model).



August 4, 2025
Page Three

ICC were limited to declarations from just a handful of UpCodes' thousands of customers, UpCodes could argue that the impact of its copies in the marketplace is small or that damages are minimal. Unless UpCodes is willing to stipulate that its conduct has caused substantial harm to the market for ICC's works and caused significant harm to ICC, ICC is entitled to seek discovery to show the full range of ways in which UpCodes' copying has impacted the marketplace, including by seeking information about customers who use UpCodes as a substitute for ICC's copyrighted works. Impact on the marketplace is one of the most important factors in a fair use defense and therefore ICC is entitled to document production of the relevant documents in order to adequately defend against such arguments from UpCodes. *See Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 189 (2d. Cir. 2024) (citation omitted). UpCodes should not be permitted to preserve its arguments that its conduct has not caused significant harm to ICC and the marketplace while at the same stifling discovery that is likely to undermine those arguments.

Sixty to seventy subpoenas is a small but reasonable subset of UpCodes' more than nine thousand customers, and ICC has agreed to work with customers to reduce the burden of responding to subpoenas. ICC is entitled to this information and remains committed to pursuing it in the least burdensome way possible. Indeed, in a parallel litigation against another SDO, the American Society for Testing and Materials served a similar number of subpoenas on UpCodes' customers[2]. UpCodes fails to articulate why the result should be different here. UpCodes' offer in its July 21, 2025 Letter is unacceptable. As a result, the parties are at an impasse.

For the reasons set forth above, ICC respectfully requests this Court grant ICC the authority to subpoena between sixty to seventy of UpCodes' customers.

Meet and Confer certification: On August 4, 2025, counsel for ICC and counsel for Defendants met and conferred. Jane Wise attended on behalf of ICC and Hannah Jiam and Mark Marciszewski on behalf of UpCodes. UpCodes' position is that ICC is not entitled to serve subpoenas on 60-70 customers and instead maintained that ICC is only entitled to obtain declarations (through UpCodes) of no more than five customers. ICC's counsel confirmed with counsel for UpCodes that they believed the parties were at an impasse as to the service of subpoenas of UpCodes' customers and intended to seek a conference from the Court.

Respectfully submitted,

Jane W. Wise

---

[2] *America Society for Testing and Materials v. UpCodes et al.* – Civil Action No. 2:24-cv-01895-AB (E.D.P.A).