**MORRISON FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

September 19, 2025

Writer's Direct Contact
+1 (415) 268-6066
JGratz@mofo.com

**Via ECF**

The Honorable Valerie Figueredo
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *International Code Council, Inc. v. UpCodes, Inc., et al.*
      Consolidated Case Nos. 1:20-cv-04316-VM-VF, 1:17-cv-06261, 1:22-cv-10815

Dear Judge Figueredo:

Pursuant to Local Civil Rule 37.2 and Section II.C.2 of the Court's Individual Practices, Defendants (UpCodes) submit this letter motion requesting a discovery conference concerning Plaintiff International Code Council's (ICC) responses to UpCodes' written discovery.  Despite a lengthy meet-and-confer process, outlined in the attached attorney declaration, ICC has refused to provide complete responses to interrogatories and document requests that are central to this case.  Specifically, ICC has refused to:  (1) identify the content on UpCodes' website it alleges is infringing; (2) identify which portions of the text on UpCodes' site it claims are copyrightable but *not* adopted into law; and (3) produce historical versions of its own website, even though it demanded and received the same from UpCodes.

For the Court's convenience and pursuant to Local Civil Rule 37.1, excerpts of the written discovery are attached as **Exhibit 1**.  The lengthy sixteen-month meet-and-confer history is outlined in the attached declaration of Mark D. Marciszewski in Support of UpCodes, Inc.'s Motion (Marciszewski Decl.) ¶¶ 8–39.

I.   **ICC Must Identify the Specific Content It Alleges Is Infringing (***Copyright II* **Interrogatory Nos. 1 and 2).**

Interrogatories 1 and 2 ask ICC to identify the specific text on UpCodes' website that it claims is infringing and, for each instance, to state the basis for the individual defendants' liability.

ICC's response to Interrogatory 1 was simply to recite the legal standard for copyright infringement, specifically that "to the extent UpCodes copied, displayed, [] prepared a derivative work . . . or otherwise violated one of the exclusive rights . . . such actions constitute copyright infringement." **Exhibit 1**.  Merely stating that the infringing parts of UpCodes' website are infringing is wholly insufficient.  ICC, as the plaintiff, bears the burden of identifying the allegedly infringing material, and it cannot shift the burden to UpCodes by providing evasive, catch-all answers.  *See, e.g.*, *Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 878–79, 891 (N.D. Cal. 2023) (granting summary judgment where plaintiff failed to identify any alleged infringement for 27 of her works).  ICC's contrary position—that UpCodes is better positioned than ICC to identify all of the text on its website that it copied from ICC—is untenable, as it leaves UpCodes to predict what ICC believes is infringing.

ICC argues that identifying the text on the UpCodes website would be unnecessarily burdensome because the copyright claims in this case (*Copyright II*) are similar to those in ICC's earlier case (*Copyright I*).  In an effort to resolve this dispute, UpCodes offered multiple times to forego a more

MORRISON FOERSTER

The Honorable Valerie Figueredo
September 19, 2025
Page Two

detailed response if ICC would simply confirm in writing that the scope of its infringement claims in *Copyright II* are identical to what it alleged in its *Copyright I* summary judgment briefing, albeit with different Works in Suit.  ICC has flatly refused this reasonable compromise.  UpCodes is therefore left to guess what specific content ICC claims is infringing and under what theory (a copy? a derivative work?), which is contrary to the fundamental purpose of discovery.  *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966) ("The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush. . . .").

If ICC does not accept UpCodes' proposed compromise, ICC must provide full responses to these Interrogatories.

II.     **ICC Must Identify What Allegedly Infringing Text It Contends Does Not Carry the Force of Law (*Copyright II* Interrogatory Nos. 6 and 7).**

Interrogatories 6 and 7 ask ICC to identify any text on UpCodes' website that ICC claims is infringing but that "does not carry the force of law in one or more jurisdictions."  This question goes to the heart of what is left in this case after the Court's summary judgment ruling in *Copyright I*.  In that decision, this Court held under three independent legal theories that "ICC cannot claim actionable infringement based only on Defendants' accurate posting of the I-Codes as Adopted, which are essentially enacted state and local laws."  Decision & Order at 19–20, ECF No. 105; *accord id.* at 50, 54, 68, 75, 76, 91, 92 (finding no infringement of accurate posting of the law under public domain, merger, and fair use theories).  Given the Court's unequivocal ruling, the remaining dispositive question in *Copyright II* is what content, if any, on UpCodes' site does ICC claim is both infringing and ***not*** the adopted law.

ICC's response, however, lists only broad categories of material it claims to own:  (1) the codes "which the state and local jurisdictions . . . enacted"; (2) "the codes listed in Exhibit A to the Complaint that has explicitly not been adopted by state and local jurisdictions . . . that UpCodes has displayed on its website, including as part of a redline or code comparison"; and (3) "all codes commentary, notes, non-binding portions or optional provisions of ICC's Codes or any other copyrighted language that does not 'carry the force of law.'"  **Exhibit 1**.  But critically, ICC refuses to identify:  (1) what content ICC contends has not been adopted by jurisdictions; (2) what content ICC contends is non-binding or optional; or, most importantly, (3) where that content appears on the UpCodes website, if at all.  ICC's response is plainly deficient, as ICC has not identified any text on the UpCodes website, as the Interrogatories ask.

ICC's excuse for this omission is that whether the text on UpCodes' website is "the law" is merely UpCodes' defense to copyright infringement, and therefore ICC has no obligation to provide this information.  This position is foreclosed by the Court's prior order.  The issue is not burden of proof,[1] but relevance to ICC's own *prima facie* case.  To prove infringement, ICC must show UpCodes copied protectable expression.  Under this Court's prior rulings, model codes adopted into law are not protectable in this context.  *See* ECF No. 105 at 19–20 ("ICC cannot claim actionable infringement based only on Defendants' accurate posting of the I-Codes as Adopted, which are essentially enacted state and local laws."); *see also id.* at 68 ("Just as accurately identifying a fully-adopted model code as the enacted law amounts to posting the law, **which is in the public domain**, copying a model code that has been adopted in full **would be protected by merger** if done for the purpose of expressing the

---

[1] In fact, ICC has propounded Interrogatories on UpCodes regarding topics ICC bears the burden of proof as the plaintiff, such as the lack of a basis to pierce the corporate veil, why each of the alleged false or misleading statements are not false or misleading, and why the alleged statements are not material.

**MORRISON FOERSTER**

The Honorable Valerie Figueredo
September 19, 2025
Page Three

identically-worded law." (emphases added)).  Therefore, identifying what content on UpCodes' website is *not* the law is essential to defining the scope of ICC's own affirmative claims.  ICC must identify the material that forms the basis of its suit.

If ICC contends that none of the text on the UpCodes' website is the law, then it should say so.  However, if it contends that UpCodes has posted copyrighted text that is *not* the law, ICC must identify that material.

### III.   ICC Must Produce Historical Versions of Its Website (*Copyright II* RFP No. 29).

RFP 29 asks ICC to produce historical versions of its website for the same time periods[2] for which UpCodes, at ICC's insistence, already produced its own textual histories.  In short, it asks for mirrored discovery.  **Exhibit 1**.  ICC has refused, claiming undue burden and lack of relevance.  ICC's objections are without merit.

First, ICC has never substantiated its burden with any detail about time or cost, despite UpCodes' repeated requests.  A bald assertion of burden is insufficient.  Second, the discovery is highly relevant.  ICC puts the content of its own website at issue by alleging that UpCodes' advertisements are false or misleading, in part, because ICC's own website is "accurate," is "always up to date," and offers "integrated amendments."  **Exhibit 2** at 6–7.  UpCodes is entitled to test the historical accuracy of ICC's site to defend against these claims.[3]  The historical accuracy of ICC's site is also relevant to UpCodes' unclean hands defense as ICC makes nigh-identical claims about its own site.  Courts have used the unclean hands doctrine to deny relief in circumstances similar to the ones here.  *See, e.g.*, *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 534 (S.D.N.Y. 2009) ("[plaintiff] cannot, having jumped on the bandwagon of [advertising the benefits of] calcium and magnesium first, now jump off and claim that [defendant] must get off too.  Therefore . . . [plaintiff's] own unclean hands also preclude . . . equitable relief. . . .").[4]  ICC argued it needed UpCodes' historical website to review potential errors, and UpCodes needs ICC's historical website for the same reason.

To address any possible burden, UpCodes offered a significant compromise: in lieu of producing historical captures, ICC could produce screenshots of its current website along with a sworn declaration detailing what changes, if any, were made to those web pages, and when.  This offer was necessary because ICC's counsel has made conflicting representations over time about whether the website is truly static or if it is updated to correct "high priority errors."  *Compare* Marciszewski Decl. ¶ 20, *with* 31 & 37.[5]  If there aren't any changes, ICC should just say so, clearly.

ICC rejected this compromise and instead produced screenshots of its current site while refusing to provide the essential declaration.  This is not sufficient.  ICC should be compelled to either produce the historical versions of its website or provide a clarifying declaration.

---

[2] UpCodes produced historical versions of text of its website from December 9, 2018; December 20, 2019; January 4, 2022; and January 2, 2024.  These are the dates UpCodes asked ICC to collect.

[3] ICC itself argued in an effort to avert dismissal of this action that UpCodes' identification of "errors on ICC's website raises disputed factual issues."  (Pls.' Letter Br., Ex. 2 at 3 n.4, ECF No. 111-2.)  ICC cannot now render these issues off-limits in discovery.

[4] *See also Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 356 (S.D.N.Y. 2008) (similar); *Haagen-Dazs v. Frusen Gladje Ltd.*, 493 F. Supp. 73, 75–76 (S.D.N.Y. 1980) (similar).

[5] ICC's position that it searched a relevant custodian and could not find any changes does not satisfy its obligation to respond to RFP 29 asking for documents sufficient to show its historical website.

**MORRISON FOERSTER**

The Honorable Valerie Figueredo
September 19, 2025
Page Four

Sincerely,

*/s/ Joseph C. Gratz*

Joseph C. Gratz


cc: kevin.fee@us.dlapiper.com
jane.wise@us.dlapiper.com