

**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
www.dlapiper.com

Jane W. Wise
jane.wise@us.dlapiper.com
T  202.799.4149
F  202.863.7849

October 3, 2025
*VIA ECF*

The Honorable Valerie Figueredo
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re:   *International Code Council, Inc. v. UpCodes, Inc. et al.* – Consolidated Case Nos. 1:17-cv-6261, 1:20-cv-04316, and 1:22-cv-10815

Dear Magistrate Judge Figueredo:

Pursuant to Dkt. No. 251, Plaintiff International Code Council, Inc. ("ICC") files this response to Defendants' ("UpCodes") September 19, 2025 letter.  For the reasons below, ICC respectfully requests the Court deny UpCodes' requests to compel further responses.

### I.     Copyright II Interrogatory Nos. 1 and 2

Interrogatory No. 1 asks ICC to "[i]dentify by URL all text on the UpCodes Website that You contend infringed Your Codes, including the Codes listed in Exhibit A of the Complaint…".  Interrogatory No. 1 is overly broad and unduly burdensome, particularly in light of the claims at issue.  ICC's copyright infringement claims are straightforward.  ICC owns the copyright to the works identified in Exhibit A to its Complaint.  UpCodes reproduces and displays those works in their entirety.  UpCodes has failed to explain why identifying the text by individual URL is necessary or proportionate to the needs of this case.  Additionally, it seeks information about ICC's codes, beyond those at issue in the case beyond Exhibit A.  Moreover, UpCodes' website constantly changes.  UpCodes is in the best position to know what has changed.  There is no reason for ICC to consistently monitor and amend a response for thousands of URLs.

It strains credulity to suggest that UpCodes is "left to guess" what content on the UpCodes Website is infringing or has infringed ICC's copyrights.  UpCodes' website identifies publications by publisher, including a drop-down menu where users can select to view works published by ICC.  *See* Ex. 1.  In its response, ICC states that the infringing content includes "any code that is currently posted or has been posted on UpCodes Website that includes the entire text of ICC's copyrighted work or portions thereof, including codes that incorporate amendments by state and local jurisdictions, infringe ICC's exclusive rights."  UpCodes does not articulate any explanation for why ICC must provide a list of thousands of URLs showing where ICC's works are displayed.

October 3, 2025
Page Two

Separately, UpCodes makes uses of ICC's works of which ICC is not aware. The protective order in this case prohibits ICC from obtaining certain confidential information. Dkt. 27. For example, UpCodes' AI-based research assistant "UpCodes Co-Pilot" answers questions by "pulling from frequently updated code sections." *See* Ex. 2. UpCodes also now imbeds specific production promotions within its code libraries. *See* Ex. 3. ICC cannot be expected to identify these types of uses in its interrogatory responses.

UpCodes' letter barely addresses Interrogatory No. 2, which asks ICC to "identify all facts and documents that form the basis for Your contention that both Scott and Garrett Reynolds personally and directly participate" in the alleged infringement. ICC's response states "Scott and Garrett Reynolds are the founders and owners of UpCodes. Scott and Garrett Reyolds do not dispute that they copied, scanned, and manipulated ICC's Codes to create digital versions. *See, e.g.*, Dkt. 92-1 ¶¶ 103-13, Dkt 100-1 ¶¶ 103-13. Scott and Garrett Reynolds have also posted comments indicating that they remain personally and directly involved in the decision to post the content on UpCodes platforms. *See, e.g.*, Ex. 4. This response does not require amendment.

### II.      Copyright II Interrogatory Nos. 6 and 7

Interrogatory No. 6 asks, "if You contend that You hold copyright in any text that currently appears on the UpCodes Website, identify any portion of that text that You contend does not carry the force of law in one of more jurisdictions." Interrogatory No. 7 asks, "if You contend that You hold copyright in any text that previously appeared on the UpCodes Website, identify any portion of that text that You contend does not carry the force of law in one or more jurisdictions."

First, the burden of these requests is exceptional. A single ICC code consists of over 900 pages of text. UpCodes reproduced and displayed over four hundred codes using ICC's copyrighted works. In all circumstances, UpCodes knows the content that it took from ICC, because it purchases ICC's books, scans each page, and converts them into website content. UpCodes then adds local amendments. In every instance, UpCodes knows whether the text came from ICC or a locality. Despite this, UpCodes seeks to impose the extraordinary task of forcing ICC to make legal determinations as to every line of text and recite it in an interrogatory response. ICC expressly objected to this as unduly burdensome and not proportionate to the needs of the case.

For avoidance of doubt, ICC does not agree with UpCodes' theory that when a model code, like ICC's, is incorporated by reference by a jurisdiction the result is a loss of copyright in ICC's code. ICC relies on the unambiguous precedent in the Supreme Court's *Georgia v. Public.Resource.Org, Inc.*, decision. 590 U.S. 255 (2020). There, the Court explained: "Instead of examining whether given material carries 'the force of law,' we ask only whether the author of the work is a judge or a legislator. If so, then whatever work that judge or legislator produces in the course of his judicial or legislative duties is not copyrightable." *Id.* at 276. Instead, the Court announced a "straightforward rule based on the identity of the author. . . . That rule applies regardless of whether a given material carries the force of law." This rule, expressly excludes "private parties[] who lack the authority to make or interpret the law" like ICC. *Id.* at 265. *Int'l Code Council, Inc.*

*v. UpCodes, Inc.*, No. 17 CIV. 6261 (VM), 2020 WL 2750636, at *8 (S.D.N.Y. May 27, 2020) ("Because ICC is a private party that lacks the authority to make or interpret the law, the Government Edicts doctrine is clearly not dispositive of this case.").

Accordingly, ICC's interrogatory response states, "ICC claims copyright protection in all portions of codes that are currently posted on UpCodes Website which the state and local jurisdictions who enacted those codes copied or derived from codes developed by ICC. ICC also claims copyright protection in the content of the codes listed in Exhibit A to the Complaint that has explicitly not been adopted by state and local jurisdictions when enacting their codes and that UpCodes has displayed on its website, including as part of a redline or code comparison. ICC also owns copyrights in all code commentary, notes, non-binding portions or optional provisions of ICC' Codes or any other copyrighted language that does not "carry the force of law." Notably, this response is nearly identical to the response that ICC provided in the first copyright case. There, UpCodes did not pursue the exhaustive and improper exercise that UpCodes suggests here. UpCodes is not entitled to demand a legal treatise in the guise of an interrogatory response enumerating whether each provision "carries the force of law." Such an exercise is unduly burdensome and not proportionate to the needs of this case.

### III. Copyright II RFP No. 29

UpCodes' Request No. 29 is baseless. The Request seeks, "[d]ocuments sufficient to show the historical text of codes on ICC's website corresponding to any section of historical text UpCodes provides of the UpCodes website." Critically, however, ICC does not maintain historical versions of its website and therefore has nothing to produce. ICC has explained this to UpCodes on numerous meet and confers. ICC's website is materially different from UpCodes' website. Unlike UpCodes, who updates content continually and on an ongoing basis, ICC's website contains static versions of each code. When a code is updated, ICC posts a new version, with a specific date to its website. Ex. 5. Therefore, once a code is published on the ICC website, it will remain in that form. The only exception to this would be in a very rare circumstance where this is a technical error, like a page failing to display. That change, however, would not alter the content of the code.

Nevertheless, ICC took steps to comply with UpCodes' request. First, ICC collected emails from the custodian at ICC responsible for making changes to its website to determine whether any responsive documents address the rare circumstance described above. ICC did not locate any after a reasonable search—which ICC conveyed to UpCodes. Second, ICC undertook a significant effort to capture all versions of the at issue model I-Codes on its website and produced those to UpCodes. UpCodes was not satisfied. ICC underwent a significant further effort to capture and produce historical versions of the I-Codes as well as specific state codes identified in Request No. 29. In total, ICC produced over 30,000 pages of screenshots from the ICC website. ICC has no additional documents to produce, and therefore UpCodes' request should be denied.

October 3, 2025
Page Four

Respectfully submitted,

Jane W. Wise