```
                  UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK


INTERNATIONAL CODE COUNCIL,
INC., et al.,                           : Docket #17-cv-06261

                    Plaintiffs,   :

     -against-                    :

UPCODES, INC.,                          : New York, New York
                                          October 8, 2025

                    Defendant.

---------------------------------:

                     PROCEEDINGS BEFORE
              THE HONORABLE VALERIE FIGUEREDO
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:        MORGAN LEWIS & BOCKIUS LLP
                      BY:  JANE W. WISE, ESQ.
                      1111 Pennsylvania Ave, NW
                      Washington, DC 20004


                      DLA PIPER, LLP
                      BY:   JORDAN CHISEK, ESQ.
                      500 Eighth Street, NW
                      Washington, DC 20004


For Defendant:        MORRISON & FOERSTER, LLP
                      BY:  ADITYA KAMDAR, ESQ.
                           MARK MARCISZEWSKI, ESQ.
                      425 Market Street
                      San Francisco, California 94105

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

THE DEPUTY CLERK:  Good morning.  This is the matter of the International Code Council, Inc., et al. versus UpCodes, Inc., et al., Case Number 17-cv-6261, the Honorable Valerie Figueredo presiding.

Counsels, can you make your appearances for the record, starting with plaintiffs' counsel.

MS. WISE:  Good morning, your Honor.  This is Jane Wise for plaintiff ICC, and I'm joined by my colleague Jordan Chisek.

THE DEPUTY CLERK:  Defense.

MR. KAMDAR:  Good morning, your Honor.  This is Aditya Kamdar for the UpCodes defendants.  My colleague Mark Marciszewski may also be trying to dial in, but as of now, it's just me.

THE COURT:  Good morning, everyone.  This is Judge Figueredo.  Whenever your colleague ends up joining, we can -- I don't think it's a problem on our end.  So whenever he joins, he can just join.

Could that potentially be him?

MR. KAMDAR:  Is that Mark?  I believe it is, your Honor.

THE COURT:  All right.

MR. MARCISZEWSKI:  Hi.  Sorry, this is Mark Marciszewski for the defendants.

THE COURT:  Okay.  I'm sorry, let me just get the name again.  I think I have -- do I have -- who do I have, then, for the defendants?

MR. KAMDAR:  It's Aditya Kamdar and Mark Marciszewski.

THE COURT:  Okay, great.  So I have the letters that came in, the first one on September 19th at ECF 249, and then I have the October 3rd letter at ECF 252.

And I might -- so this might just be my misunderstanding, and I'm obviously -- you know, anyone who wants to speak, I'll give you ample time to do so.  But in terms of the first request, which had to do with identifying the specific content ICC alleges is infringing, I'm a little confused as to what you mean by identifying specific URLs.

MR. KAMDAR:  Sure, your Honor.

So what we want is fairly -- I think it's fairly simple and straightforward, which is, ICC appears to accuse UpCodes' website of hosting various ICC codes, and we just want to know what parts of our website are actually in play in the case.  Is it --

THE COURT:  I'm wondering, why wouldn't it be sufficient if they have identified the codes that

they claim you've infringed on for which they have a copyright?  Why is that not sufficient?

MR. KAMDAR:  Well, it's not sufficient for, I guess, a couple reasons, your Honor.  One is ICC's claims in their interrogatory response aren't just about direct copying.  They also allege that we've created improper derivative works, and we're sort of left to guess which of the codes on our website they think fall under which theory.

And, second, it's not entirely clear, especially from their October 3rd letter, whether it's just the codes that are at issue.  We've been led to believe that that might be the case, and that's part of why we sought our compromise of, you know, is it really just the same issues as it was in the first copyright case, and can we agree to that?

But in their letter, they mentioned some other parts of the UpCodes website, things like UpCodes Copilot, or that UpCodes now embeds specific production promotions within its code libraries.  We don't know if those are at issue in this case.

And part of the point of this interrogatory is to ask them to tell us, if it is those things as well, you know, point to those things.  We need to know exactly what's in play here so we can figure

out how -- you know, I guess, what the scope of our defenses are.  Is it just all the codes, in which case we would say that's unactionable under the first copyright decision.  Is it other things, in which case we might have fair use arguments.

And depending on what exactly is at play, that might affect our, you know, damages calculations and so on.  So it's just a sort of -- I don't know, it seems to me a sort of simple request to say, what on our website is at issue, so we can actually do the analyses and the defenses that we need to do.

THE COURT:  So let me ask.  I know they point to what's in Exhibit A.  Would it be sufficient if they were to tell you, of the codes in Exhibit A, what they claim was improperly copied versus what they claim was an improper derivative work?

MR. KAMDAR:  I think that would be helpful, and I think that might get part of the way there.  But it's more than just what is being infringed, I guess.  It's also what is infringing.  Because we might have a different argument that, you know, a particular tool on UpCodes' website that may involve laws based on ICC codes, we may have a different

fair use argument for that.  So if -- but we just need to know is that even in play, basically.

THE COURT:  Does anyone from plaintiff -- from ICC want to chime in?

MS. WISE:  Yes, I would love to.  I just wanted to make sure your Honor was finished with questions for defendant.

I think your instinct on this, your Honor, is correct.  We have identified what we contend is infringed.  I think the parties see this different ways.  It sounds like my colleague wants ICC to limit its claims based on the Court's prior order, and ICC doesn't agree with that position.  It alleges that the display of the entire content of each of the works in Exhibit A infringes its copyright and is considered a derivative work because they've made changes to those.  So I think each and every one of the Exhibit A registered copyrights is both a direct infringement and a derivative work infringement.

And that's why we said in our interrogatory response, to the extent UpCodes copied, displayed, or prepared a derivative work based on those copyrighted works or portions thereof, it violates ICC's exclusive rights.  This response is materially

the same as what we provided in the first copyright case and was sufficient there.  We -- sorry, I didn't catch who was joining.

MS. JIAM:  I apologize.  This is Hannah Jiam, counsel for UpCodes.  I apologize, I'm just observing.

MS. WISE:  Got it.

What we would be happy to do -- we referenced, sort of at a high level, the things that could also be derivative works.  I think that's included in our interrogatory response.  But the use in Copilot, and the use in other public statements we could identify.  I don't think we can give the level of detail on the URL level that this request -- the interrogatory asks for, nor do I think that's proportionate to the needs of this case.

The problem with some of this is we're just finding out places that UpCodes is using information.  We've taken a few depositions, and we learned in those depositions that UpCodes is using some of the ICC content in its Copilot tool.  That is a highly confidential transcript, and so I won't discuss it in detail, but ICC can't know -- ICC doesn't have access to know that information, so it

can't provide in an interrogatory response that type of level of information.  And prior to the depositions, we only knew what was publicly stated on the website about it.

So there's a little bit of a chicken-and-the-egg situation with discovery.  As we learn about things -- we aren't going to exclude from the case something before we get additional information through discovery about how plaintiffs' works are actually being used.

But I think to the extent that they're asking what portion of the works or what works are ICC's work, the notion that they can't figure out or are left to guess what our claims are, I think is not credible.  We've provided a detailed list, and there's a section on their website where we put this in as an exhibit.  They can go and filter their own website, then sort by all of ICC's works.  Those are the works that are at issue.  And they may have made different uses of it, but I think, again, UpCodes knows what those uses are.

So I just am left a little bit confused about what else we're supposed to provide in this response.

MR. KAMDAR:  I'm happy to respond, your

Honor.

THE COURT: So let me -- let's just make -- I just want to make sure I'm on the same page. It sounds like -- and you can correct me if this is a misunderstanding. But it sounds like we have an Exhibit A, and it sounds like, from Ms. Wise's representation, is that plaintiff claims that all the works listed in Exhibit A are both a direct infringement because they were copied and a derivative work was made.

But then there seems to be some category of tools on this website -- Copilot was mentioned, maybe there's another one -- for which the plaintiffs believe that defendants may have taken something that was in Exhibit A and used it in some form in a derivative fashion.

What I'm struggling to -- and if that's -- if I've sort of summarized that correctly, then what I'm struggling to understand is why you need the URLs, why you need anything more than what's in Exhibit A and the representation that that's -- plaintiffs' theory is that both -- is those items were both copied and made derivative works out of.

MR. KAMDAR: Well, your Honor, the URLs were a way of making sure that we know exactly what

on the website they're pointing to.

Right now, you know, their interrogatory responses don't mention any other tools, they don't mention any other aspects of UpCodes' website.  And they represented in the meet and confer that we should know what is at issue in this case because this case is very similar to the first copyright case.

Really, at the end of the day, what we're trying to figure out is what is the delta, what is the difference between this case and the first copyright case.  And I guess I would want them to articulate -- whether or not it is pointing to actual URLs for the tools, I mean, it could even just be references to the tools or references to other parts that they consider to be derivative works.  Because right now, I could not tell you what is a derivative work here and lay that out in this interrogatory response.

MS. WISE:  I'll just briefly respond, if I may.

THE COURT:  Yes, please.

MS. WISE:  So, I believe, the Court, in its prior decision on summary judgment, did identify the I-Codes, as amended, which is the plaintiffs'

copyrighted work, with local amendments sort of interspersed throughout it, as a derivative work.

So we can -- at this same level of generality, we are happy to amend our response to Interrogatory 1 to say we think the tools use portions of ICC's codes in Exhibit A and provide that additional detail.  We're not opposed to doing that, but we are opposed to doing so on a URL-by-URL basis, or providing -- I think for us to provide a more fulsome answer is both information outside of ICC's knowledge -- like, even after having a few depositions, we don't know how much of the works in Exhibit A or other ICC works are being used by the Copilot tool.  That's information that we don't yet have and certainly that ICC doesn't have available to it.

So if the level of generality that's in the existing response is acceptable, we can update it to identify those tools.  We have no objection to doing that.  The objection we have is going through the burdensome task of doing so on a URL-by-URL basis, which, to me, it sounds like UpCodes no longer wants us to do.

MR. KAMDAR:  I think, your Honor, we would be -- sorry, apologies.

MS. WISE:  No, no.  No worries.  Go ahead.

MR. KAMDAR:  I was just going to say, I think it would be okay if the interrogatory response clarified is it just the codes at issue?  Is it also the tools?  If it's the tools, which tools are at issue?  Is it any other parts of our website.

Right now it, as written, does not provide any of that clarity.  And the main point of this is we don't want to be, you know, surprised later on when all of a sudden they focus their firepower on a part of our website that we didn't have a chance to fully develop.

And so, you know, if the issue really is not providing URLs that point at each instance, I think there is a compromise that is reachable so long as we have clarity about what specifically on our site they contend infringes.

THE COURT:  Ms. Wise, it sounds like you were -- from your prior response, that you would be able to amend your interrogatory to say, like, you know, these specific tools use a portion of the ICC codes in Exhibit A, and you would be able to identify those tools at that level of generality?

MS. WISE:  Yes.

THE COURT:  Okay.  And it sounds like --

but you can let me know if I misheard.  It sounds like that would be sufficient to accommodate UpCodes' concerns here?

MR. KAMDAR:  Yes.

THE COURT:  Okay.  So then do we want to move on to the other issues?

MR. KAMDAR:  Yes, your Honor.

THE COURT:  Yeah.  The identifying which infringing text does not carry the force of law.

MR. KAMDAR:  Yes, your Honor.  I'm happy to speak about that or answer any questions, whatever the Court wishes.

THE COURT:  Well, I guess, let me ask Ms. Wise.  Does ICC not know which of the codes have been adopted by which specific jurisdictions?

MS. WISE:  I don't think we are challenging, at the highest level, that the jurisdictions where UpCodes has posted a version of ICC's codes, that the jurisdiction has adopted or incorporated by reference the ICC code.

I think the issue that we have is it appears that UpCodes' request would have ICC go through each of those codes and identify what portions carry the force of law and what portions do not.  And these are 900-plus-page texts.  They're

presented online, so they are -- you know, that doesn't necessarily equate to web pages, I think, but just to get the sense of one code, and that's multiplied by every jurisdiction they're in.

So, for example, if New York has adopted Appendix A, but not Appendix B through G, and UpCodes mistakenly posted certain appendices, then those would be errors by UpCodes that, you know, wouldn't be consistent with what New York has adopted.  That analysis, however, is a pure legal issue that would require ICC to have its attorneys apply its legal judgment to assess, for every single state and every provision within these codes, what does and doesn't carry the force of law.

And that's asking us to write a legal treatise on 50 jurisdictions plus any localities.  I just don't think that that is what is called for in an interrogatory response.  This seems like an improper interrogatory, asking ICC to set out what the law is.  And, frankly, ICC's opinion about what the law is, I don't know whether it's relevant.  The Court is the one that determines what is or isn't the law, not ICC.

THE COURT:  So, to just, I guess -- I just want to make sure I'm also on the same page here.

It sounds like there are some jurisdictions for which they would only adopt portions of the code, and it sounds like it's not as simple as just going somewhere to reference whether that portion has been adopted.  You'd have to have lawyers come in and determine --

MS. WISE:  Right.

THE COURT:  -- with some form of analysis, whether whatever portions of whatever code have been adopted by whatever city or state?

MS. WISE:  That's right.  So ICC writes what are called the model codes, and so they would draft a code that can be applied to any jurisdiction.

So, for example, in the first copyright case, UpCodes made an error where it posted a tsunami provision for Wyoming, which didn't adopt that provision because there aren't tsunamis in Wyoming.  I think that makes sense.  So that's a pure question of law as to what did Wyoming adopt and what did UpCodes post.

And I don't think it's proper to ask ICC to walk through provision by provision and determine, is this the law of New York, is this the law of New York City, for every single provision -- there are

15 codes. That undertaking -- you know, I can't even imagine how many hours that would take. And doing so when it's really just asking ICC to set out what is the law doesn't make sense to ICC.

THE COURT: Mr. Kamdar?

MR. KAMDAR: Yes, your Honor.

So what we're basing this off of is this premise that, you know, we have this existing ruling that says that ICC can't claim actionable infringement based on defendants' accurate posting of the I-Codes as adopted. And the Court was clear that if UpCodes infringes, it must either be because they're posting ICC's model codes as model codes, or because there's some sort of mingling of portions that are not actually adopted. And so -- you know, this is now the baseline.

The remaining question, and the question that this interrogatory gets at, is what does ICC claim is both infringing and not the enacted law. Now, it doesn't require -- and I don't -- you know, we're not asking for extreme granularity going bit by bit.

What we're asking for is what are the scenarios where they would contend that something doesn't have the force of law? Is it just where

there are, you know, typos?  Is it just where are situations where UpCodes posts things that they contend are not adopted?  And, if so, what are those?

Right now ICC just lays out three categories, one of which is the codes which the state and local jurisdictions enacted.  And, you know, that does not seem -- that seems insufficient because it not only directly contradicts the Court's prior ruling, but the purpose of this interrogatory is to figure out what is left after that.  And then they also, you know, point to sort of a vague description of commentary notes, nonbinding provisions, or other copyrighted language that does not carry the force of law.  That just leaves us to guess what exactly they contend does not carry the force of law.

So what we need to know is what is it that they contend does not carry the force of law?  Because right now we're operating in a sort of world here where we think -- UpCodes thinks that the things that we post on our website carry the force of law because they have been adopted.

THE COURT:  Can I ask a question?  And, again, I may just not be getting it.  Why is that

not an argument you would make, you know, at summary judgment as a defense to this allegation that there was an infringement?

In other words, if it's on Exhibit A and you know that the universe of infringing codes are on Exhibit A, and they say, well, this was, you know, improperly a direct infringement, and it copied it, and why wouldn't you then in response say, "No, it was adopted by New York City"?

MR. KAMDAR:  Well, I think there are -- I think one reason why it's not purely a defense is -- I guess there's a couple reasons.  One is we think we are sort of operating in a different plane here.

So I guess the short answer to your question is, yes, we are going to make that defense. If ICC claims that one thing that we post is not the law, then we are going to defend ourselves by saying, yes, it is the law because it was adopted in this way, or it was -- it's necessary for understanding the law and, therefore, it is part of the law, or whatever else our defenses may be.  We just want to know whether they're going to -- or whether they're trying to argue otherwise.  We want to know are there portions of the things that we post that they contend are not the law so we can

better prepare those defenses, basically.

The second thing I would say is we think we're operating on a different plane because of the opinion -- in the first copyright case, it did make very clear that there is a sort of limited path to proving infringement here, and so we want to know what is on that path. We don't think it's the things that are enacted law. ICC may disagree, but if they disagree, they should say so.

And the other aspect of that is if there are things that are outside of the bounds of the I-Codes as adopted, that the Court has said aren't infringing, I think it's well within our -- well within what's appropriate during discovery for us to ask what is that.

MS. WISE: I'm happy to respond unless your Honor has another question.

THE COURT: No, go ahead, please, Ms. Wise.

MS. WISE: So ICC does not agree that the Court's prior decision concerning other copyrighted works limits its claims in this case. It does contend that everything in Exhibit A is protected by copyright law. We tried to make that expressly clear in our letter, saying that the Supreme Court precedent and even Judge Marrero's

prior decision say doctrine, which is what might make a proclamation of a legislature or a judge, those statements carried out within the course of their duties as lawmakers, that's what makes a law, not a lawmaker, and doesn't make laws.

So we feel very strongly that what we claim are copyrighted, protected works maintain their copyright protection and are not law, despite the fact that they have been incorporated by reference. And that's what it says in our response.

To the extent ICC -- to the extent there's a contrary ruling, we think that there are the categories of -- within ICC's codes. There are categories that are certainly not carrying the force of law, like ICC's commentary on the code section or notes that ICC includes for the reader of its codes. Those things are not binding. They don't govern any conduct. We don't think the ICC codes do cover conduct.

So I just don't know, beyond the categories we've identified here, and without -- I don't know what my colleague suggests we could do, other than write this treatise that I think is asking for purely law and is improper, to better define our claim.

MR. KAMDAR:  If I may, your Honor.

THE COURT:  Yes, please go ahead.

MR. KAMDAR:  Just one quick point.  We are not asking ICC to concede any position on copyright infringement, and so we don't think their, you know, invocation of the *Public Resource* case is well taken.  It could very well be that they think that parts of the codes that we post that do carry the force of law or that don't carry the force of law are still copyright infringement.

What we want to know and what we're trying to figure out is what does and what does not -- what do they contend does and does not carry the force of law, so we can, essentially, narrow this dispute and figure out what our defenses will be.

MS. WISE:  I think what I'm struggling with is in that response, it sounded like UpCodes is saying ICC doesn't have to narrow its claim but they have to narrow its claim, and to do so, they have to tell us what does and doesn't carry the force of law.  And to do that is a pure legal analysis, and I haven't really heard anything from my colleague to say, oh, no, it's not a legal analysis, here are the facts that we want you to outline beyond what you've provided.  And I just don't think there's any

argument that figuring out what does and doesn't carry the force of law is going to be a more proper exercise for summary judgment, where the parties make legal arguments about their contentions.

THE COURT:  Unless anyone wants to add anything else, which you're free -- you know, you should feel free to do so, I think we can move on to the third topic about the historical version.

MR. KAMDAR:  Sure, your Honor.  I could just say, I do think our interrogatory is appropriate, but to the extent the Court is inclined to say that this is calling for purely legal argument as opposed to applying the law to fact.  I mean, I think one thing that we would consider is, you know, tell us what has been adopted or enacted or not enacted.  You know, those are facts.  That is not a legal judgment about what is, I guess -- to use ICC's counsel's terms, what is law.

THE COURT:  Can I just ask, though, the issue of what's been enacted, is that not something UpCodes can find, too?

MR. KAMDAR:  It is, your Honor, and that is something that I guess we have already.  I guess part of our position is that everything on our website has been enacted.  And so this -- and I'm --

I guess, just in short, our position is everything on our website has been enacted.  So we're trying to figure out what ICC disagrees with there.

THE COURT:  Ms. Wise, has ICC already perhaps done the analysis of what on Exhibit A has been enacted into law?

MS. WISE:  No.  I mean --

THE COURT:  So I just needed to know which portions of Exhibit A are currently in effect in whatever jurisdictions may be relevant.

MS. WISE:  I think that that is an ever-changing list.  I think that's part of what is challenging about this, right?  ICC knows that the -- you know, if you're looking at a jurisdiction, ICC knows that New York adopted the 2021 version of the IBC at that level of generality.  I don't think that that's true, that that's a factual issue.  I think that that requires going through each jurisdiction and figuring out what the law is.  That's a legal question.

But does ICC know what's been adopted?  Yes.  Does ICC have a document existing that outlines all of the amendments made by every locality that uses the I-Codes?  No.

To the extent that ICC knows, it is on its

website.  And I think this gets into the next issue. We've produced what we have as the versions on ICC's website that say this is the law in New York that has been -- this is the version of the I-Code that New York uses.  But I don't think that's the same as what's being called for in this request.

THE COURT:  Sorry, are you now referring to the request about the historical versions of the website, or are we still talking about the --

MS. WISE:  Right.  The historical versions -- so I don't mean to mix the issue, but I do think that they are related.  So, for example, in ICC's website, if you went to the State of New York and you used a dropdown, you could see each version that ICC is aware of, of the codes that New York has used ICC's model codes in.

So, in my example -- and I don't remember off the top of my head if this is the exact code version they use.  But if New York adopts the 2021 International Building Code, then ICC's website would post the version of the I-Code with the New York amendments in 2021.

So does it know that those have been adopted?  To answer your question, yes.  But there's not like a document or an analysis on a

provision-by-provision basis of what does or doesn't carry the force of law, because ICC just doesn't agree with that framing.  We don't think about it that way.  We know where the I-Codes are being used. We know what jurisdictions have amended certain provisions.  But whether we've done a legal analysis to tell what does and doesn't carry the force of law, no, we have not.

THE COURT:  I hear you on that, but it sounded like at the very end the compromise proposed by Mr. Kamdar was that ICC should just identify what on Exhibit A has been adopted, which sounded like it was different than saying "carries the force of law."  And if I understood you, it sounded like if it's on your website, it's been adopted?

MS. WISE:  I just don't know that the parties really dispute this.  Like, the -- I guess -- I'm trying to think how we would go about doing this.  UpCodes has a portion of its website that identifies, by jurisdiction, which I-Codes have been adopted with or without amendments.

I don't -- ICC's website doesn't work the same way.  I'm just trying to think how we would go about doing what my colleague has said would be acceptable.  Like, could we list, for the IBC, all

of the jurisdictions that have incorporated an I-Code?  Maybe.

There are certainly localities that have adopted them that ICC is not going to be aware of. ICC has relationships -- like publication relationships with many jurisdictions, and so it is aware of those, and those are the ones that I think would be on its website.  Are there places that use the I-Codes that ICC isn't aware of?  Probably.

But at the end of the day, I don't know how this really advances the case or narrows the case. I think if there's some locality that adopts an I-Code and ICC isn't aware of it, ICC doesn't concede that it loses its copyright or that the -- how it's adopted in that locality does or doesn't carry the force of law.

I'm sorry, this is a little bit difficult to get into at a high level, so I apologize if I'm making things more confusing than they need to be.

THE COURT:  Can I -- let me just ask Mr. Kamdar.

Given what Ms. Wise said about this idea that even if they haven't -- they're not aware of some locality that has adopted this, is this -- I'm trying to understand how this information would be

useful to defendants because it -- what I keep coming back to is that it seems like if you're trying to argue as a defense that these codes carry the force of law, that seems to be like an analysis that both sides can do later on in the case and wouldn't really be seeking factual information.

MR. KAMDAR:  Well, your Honor, I think we would be okay if ICC lists out where they think each of the codes that are at issue in this case are enacted.  We think that is not a, you know, legal question.  It seems like ICC's counsel is saying they already have that information and that these are facts that are at their disposal.  That would be helpful.

We'd also, you know, in addition to that, like to know what they contend is not the law. If -- you know, if you go to any particular jurisdiction on the ICC website and you look at the state's currently adopted codes and you click on that code, it's not clear what is or is not enacted or adopted.  It seems to be everything.  If they disagree, it would be nice to know what they disagree with.  But I guess, initially, if they have the information about what has been enacted, that would be a strong start.

MS. WISE:  I'm sorry, I guess I still don't understand.  ICC codes, not all of them in every state, but ICC has 15 different International Building Codes.  They've been enacted in every jurisdiction -- not every code in every jurisdiction, but all 15 have been enacted somewhere in the United States.

If we identify that, I still don't see how that really advances anything.  I guess we could say ICC's 15 codes have been enacted in every state, but I don't think that ICC can do the analysis of what isn't law, other than the categories that we've already identified.

Like, under no circumstances does ICC concede that the incorporation by reference of its Model Building Codes by a jurisdiction makes it law.  Nevertheless, we've also identified code commentary notes, nonbinding portions, and optional provisions and any other language -- copyrighted language, meaning language that ICC wrote, not written by the jurisdiction, that don't carry the force of law.  Those are the categories of information that we contend make up our copyright claim.

To do more than that, we would have to go jurisdiction by jurisdiction and say, in New York,

Appendix 1 has not been enacted, so that's not the law. In New York, they changed -- they made XYZ alterations to the model code. That summary is, one, purely legal; and, two, is extraordinarily burdensome; and, three, it's work that UpCodes admits it has already done. So I don't understand how this advances or clarifies any issue in the case.

MR. KAMDAR: I just have two quick responses, your Honor.

THE COURT: Sure, go ahead.

MR. KAMDAR: I think if ICC can put together a list of what jurisdictions they're aware of that have adopted the codes in Exhibit A, then they should state that. The second thing is, in their interrogatory response, they do identify some things, like code commentary notes and nonbinding portions, but they also identify things like any other copyrighted language that does not carry the force of law. I mean, that just leaves us to guess what do they think does not carry the force of law and what is that other copyrighted language.

This sort of -- this is part of the issue. So I think we would be happy to get that list of what jurisdictions they're aware of that have

adopted the codes.  To the extent that agrees with our list, that would very much narrow the issues in this case, in our opinion.

And, second, to the extent they can provide more clarity about something that they already say -- you know, they already seem to have some sort of opinion about language that does not carry the force of law -- that would also be helpful.

THE COURT:  Actually, can I just ask, Ms. Wise, what is the -- what is this "any other copyrighted language that does not carry the force of law"?  What is that referring to?

MS. WISE:  So we have an introduction to most of the model codes, things that would be on its copyright page so they're part of the copyright.  I don't think anyone would contend that the copyright notice page carries the force of law.  That would be an example.  I haven't gone through every book to see.  I think there are things like additional documents in the back.  Like, there's a model ordinance or there are some additional sort of inserts that are included in some of the codes.  I don't think those would carry the force of law, but they are within our copyright.  If they have a copy of one of our books, they can just page through

them, and they can take their own lawyer's time and determine whether they carry the force of law or not.

But in the past, one of the examples we used in the motion for summary judgment was that UpCodes put up the ICC -- the entire introductory section of the model code that has -- it doesn't govern any conduct and it is part of our copyright.

I just -- still, I'm concerned about requesting ICC to list out every jurisdiction because I think the tendency with interrogatory responses is to say if it's not an interrogatory, you can't raise an issue about it.  And if UpCodes, in its ever-growing list of jurisdictions, continues to add to new jurisdictions, our basic argument has not changed.  We think any use of our codes is going to be copyright infringement.

The way that UpCodes is using them thus far to post them wholesale, I don't think it's a mystery that we think that's copyright infringement.  But just because, you know, we don't know today that a county in New York has adopted a model code doesn't mean that we agree with UpCodes that that county's use of it makes ICC's copyrighted work the law.

So I don't know at what point our list

could ever be considered complete.  And I'm concerned about being bound by a limited list when I don't think there's any real genuine issue about what ICC's claims are.

THE COURT:  Do we want to --

MR. KAMDAR:  What I --

THE COURT:  Go ahead.

MR. KAMDAR:  Sure, your Honor.

I was just going to say, what I hear is that there are aspects of ICC's books, like the copyright page and the introductory page and others, that they contend doesn't carry the force of law, that is not listed in the interrogatory.  I also hear that ICC has some sense of what has been enacted and not.

I think asking ICC to update the interrogatory to have a list that contains both of those would go a long way to being helpful and to narrowing the issues.

I'm happy to move on to RFP 29.

THE COURT:  Yeah.  If we want to move on to the website, it sounded like, I thought, from ICC's letter is that they do not maintain -- or they conducted a reasonable search and don't maintain historical copies of the website.

Is there -- is that accurate?

MS. WISE:  That's correct.  That's correct, your Honor.

THE COURT:  So if there's nothing -- if there are no historical versions, does that not answer the interrogatory for UpCodes?

MR. KAMDAR:  So I think there's a couple issues, your Honor.  The first is we are not entirely sure what is true here.  Their own counsel has made statements that -- both that the ICC website is static and that it has been updated to edit content, to address high-priority errors -- to use their language -- and we're not entirely sure which of those is accurate.

The other thing is we're not, I guess we need a little more detail about what they do and do not have because, you know, we've had this discussion in the past around UpCodes' website, where UpCodes, you know, does not regularly maintain past versions of its website but went through a very long process of writing scripts and having substantial engineering time to go through things like change logs and past versions on its servers to figure out how to piece together textual histories from four different dates, which we together

produced over 2 million pages of.

It has not been clear to us throughout the meet-and-confer process that ICC cannot do that. If what they're saying now is that they -- I guess one question is, are they saying now that they cannot do that and that they have no contemporaneous records of any changes, like tickets or emails or change logs? Because that, so far, has not been clear.

MS. WISE: I'm happy to respond, unless your Honor has a question.

THE COURT: No, please go ahead.

MS. WISE: ICC does not have a change log. I disagree it's been unclear. We told UpCodes that we would look for documents from relevant custodians about any changes that were made. I think UpCodes continually conflates the difference between the type of change that might occur, such as if your Honor went to a page of ICC's website and for whatever reason that page was down, ICC -- you know, you got something like a 404 error issue because there was something wrong with ICC's website -- ICC would fix that. But that is not the same as a change to the content of the code, which is what's relevant.

ICC has been consistent in saying that

this -- that UpCodes' search a quid pro quo, it, to me, has always sounded like UpCodes had to do something that it didn't want to do and so it wants ICC to do the same thing.  And our websites aren't the same.  ICC -- we put this in the exhibit that we -- this is in Exhibit 5 -- has static versions of each publication or subversion of the code.  And we have done our best to produce over 30,000 pages to show those different versions.

The difference with UpCodes is UpCodes doesn't keep a static code.  It has -- if you go today to a particular jurisdiction for the 2021 building code, it will be whatever UpCodes has determined is the amendments as enacted for that jurisdiction for that publication.  And that changes.  If the jurisdiction makes an amendment, UpCodes claims that it updates that automatically, or within a very soon time afterwards.

ICC doesn't do its updates that way.  It works with the jurisdictions.  And if the jurisdiction identifies, for example, an error, then the -- it's up to the jurisdiction of whether to create an errata.  And then the errata itself will be separately published and available on ICC's website.  And we have done everything we can to

produce the historical versions. So instead of just doing the exact code years, we've tried to get historical versions for each of the I-Codes that were requested in Request 29, and we've produced them, and we just don't believe we have anything else to produce.

THE COURT: Given what Ms. Wise has said, it sounds like there's nothing else left.

MR. KAMDAR: Well, I guess I would say two things, your Honor. One is that they have also told us that -- and this is their language -- in rare circumstances will the ICC team update existing content within such versions, "versions" being the codes on their website, to address certain high-priority errors. This is not an instance of their website being down. This seems to be an instance of changes made to their website.

The second thing is they produced, you know, at least one email where a jurisdiction has flagged an error on their website that they have since updated on their website.

The third thing is we have raised the issue of errors on their website. You know, as soon as the false advertising case was filed back in June 2020, we included a list of errors on their website

back in August 2020.  They knew that errors on their website were a part of our defenses and part of the issue in this case.

In our argument related to UpCodes' textual histories back in January 2024, ICC's counsel made a very strong argument about UpCodes' obligation to preserve relevant information and how, to use their words, that we should have had cached versions of our website.  It appears to us to be, I guess not totally, you know, for lack of a better word, fair that these issues are also in play for ICC, and now ICC says, well, they have nothing to show for it and they have no obligation to maintain anything.

MS. WISE:  I disagree.  I don't think there's any question that we've complied with our obligations in discovery.  We've bent over backwards to produce the documents we had.  We searched for any instance in which an error was identified.  We searched custodial documents for where an error was identified, and we didn't find any responsive documents.

I think we've already had a discovery conference separately on the errors.  But with respect to the historical versions, we -- it doesn't sound like there's anything in UpCodes' argument

that says that what we've produced is insufficient to show the historical text of the codes on ICC's website correspond.  I don't know why the 30,000 pages of screenshots from our website is insufficient.

MR. KAMDAR:  I guess there's a simple response there, your Honor, which is, they've produced screenshots of their current website, which gives us no information about what their past website looked like.

MS. WISE:  Which you did say was acceptable, just to note, in your letter.

MR. KAMDAR:  In our letter we said we would accept a current set of screenshots if they were accompanied by some sort of declaration saying that they -- there would be no changes or there had been no changes, or if there were some changes, here is a list of changes.  We never said that a current set of screenshots would be sufficient.

MS. WISE:  Right.  And ICC's position on that declaration is that that's not how RFPs work. We've produced the documents.  If you want to ask our witnesses about ICC's website, you have the documents, but there's nothing more to produce here.

THE COURT:  Mr. Kamdar, can I ask you -- it

sounded like ICC -- so it sounds like there are -- ICC does not maintain the historical versions of its website. It also sounded like, from Ms. Wise's representations, that they had conducted a search for other documents that would show when there would have been this rare circumstance where there was a change or an error, and they produced whatever they had.

Given that they've produced these two types of different documents, other than the declaration, is there anything else you want here?

MR. KAMDAR: I think that would be -- that would definitely be sufficient. I don't know -- I don't believe they have -- I guess Ms. Wise could correct me. I don't understand that they've done a custodial search, but I don't know if they've actually produced any documents. It seems like there are no records of any changes. But I think we would be happy with something that made clear that there have not been any changes, like a declaration.

The other -- I guess I would just say one more time that it shouldn't be surprising that we have asked for this, because the content of ICC's website has been at play for over five years now. And so, you know, if it's the case that they don't

have anything to produce -- no historical versions of their website, no change logs, no contemporaneous tickets, or anything along those lines -- you know, I can't make them create those, but -- and we'll just have to figure out next steps there.

THE COURT:  And, Ms. Wise, did I understand you correctly that you had done a search for things like the change logs and the contemporaneous tickets, but there wasn't anything?

MS. WISE:  Correct.

THE COURT:  Okay.  So you have searched for other documents that might show changes made historically to the website, but there isn't anything?

MS. WISE:  That's correct.

THE COURT:  Okay.

And so, then, I just want to -- I want to just talk about this declaration because I'm -- it sounds like if they don't keep the change logs, they don't keep the contemporaneous tickets, or they don't have their historical versions, I'm not sure -- someone can obviously correct me -- I'm not sure how you would create a declaration for someone to attest to what changes were made and when, if they haven't maintained a log of that.

MS. WISE:  That was part of our problem with preparing one.

MR. KAMDAR:  I think that -- you know, that may be the case, your Honor, that there might be no one who could attest to that.

I would just point to the fact that ICC's counsel has represented that there have been updates to existing content to address errors.  So, clearly, someone knows something or at some point knew something.  Perhaps they're still at ICC.

To the extent we can figure out what the extent of those changes are, I think that would be appreciated.

MS. WISE:  What we have said with respect to errors is that ICC addresses them in the next published version.  So, for example, UpCodes identified what it claimed was an error, and it would turn out that there had been an interim change in the locality's amendments to the model code.  And in the next cycle those will get incorporated.

So if on -- and, again, these are fictitious dates.  If on January 1st, 2022, North Carolina adopted the 2021 International Building Code, in May North Carolina makes an amendment -- May 2022, North Carolina makes an amendment, ICC

doesn't update the code in May, but the next time that North Carolina updates its code, that May change will be reflected.

So UpCodes wants to call that an error because it's -- because ICC doesn't change its publications the way that UpCodes does over time. But ICC would say that amendment -- that post-publication amendment gets incorporated into the next publication. So are there changes to the publications? Yes, but we've produced the historical version. So for whatever jurisdiction you're looking at, there's a dropdown that's in Exhibit 5, and you would see each of those versions that has been published.

What UpCodes is looking for is I just don't think something that exists. So I don't know how we would do a declaration when that's just not how ICC's -- we've maintained from the beginning that ICC and UpCodes' websites are very different. They are not comparable to one another. So we can't do what UpCodes does because our websites are not the same.

THE COURT: Okay. Mr. Kamdar, did you want to add anything here?

MR. KAMDAR: I guess the only thing, and

this is not -- you know, we're happy to submit this if the Court would appreciate it.  We had tried to get to the bottom of this through other discovery means, including requests for admission.  We had asked ICC specifically to admit that the codes on ICC's website are only updated when ICC, you know, works with the jurisdiction on the next edition of that code, which I understand ICC's counsel to have just said, and they denied that.

So we're not entirely sure that that is a fully accurate reflection of what ICC does.  And part of the issue is it seems -- yeah, go ahead.

MS. WISE:  I think the difference is your request for admission asked for generalized admissions that would say ICC never publishes anything until the next issue.  And I have also said that ICC will issue an errata if that's what the state wants.

So we've provided accurate responses to your requests, as your request was written.  And the statement that I made is also true.  I think there were some poorly worded requests for admissions, and we've discussed that previously in meet and confers.

THE COURT:  I wonder, Mr. Kamdar, maybe, perhaps, given the discussion today, would it make

sense to serve another RFA, perhaps more targeted, given now what you understand the baseline to be with regard to these historical changes?

MR. KAMDAR:  Yeah, I think that would -- that would be useful, your Honor.

THE COURT:  Okay.  So then I guess before we end the call, I just wanted to circle back to the second point, which had to do with this idea that the codes carry the force of law.  And I understood at the very end, Ms. Wise, you were indicating -- you had posed this example of why it would be problematic for ICC to list the jurisdictions where it is aware of that the codes had been adopted.  And you had said, well, what if UpCodes is constantly updating its website with new codes and they then adopt a new code, and you wouldn't narrow your claims or concede that that wasn't within the realm of infringement here.

And I'm just curious, if the list were -- you know, I think what Mr. Kamdar had said, what jurisdictions that you're aware of, if there's a way to maybe limit that, the timing to make it clear that it's, you know, cabined to a specific date, would that potentially address your concern that they might later add new jurisdictions that at the

time you were compiling this list, you weren't aware of, while also giving Mr. Kamdar the list he's looking for?

MS. WISE:  I'm just thinking, your Honor. I don't -- I mean, we could put in some caveated language that could try and get there.  I think the problem is UpCodes -- just because ICC doesn't know it doesn't mean it hasn't already happened.  So as long as we have language in there that, you know, limits what exactly we're representing and that we're not narrowing our claims, then I think that might be acceptable.

THE COURT:  Okay.  And I wonder if perhaps maybe that is, like, a fair compromise, and you can, you know, tweak the language to ensure that it doesn't narrow your claims in any way.  But then at least it would give UpCodes from that Exhibit A, you know, the ones that at that time you contend have been adopted.

MS. WISE:  Sure.

THE COURT:  Is there anything else anyone wants to discuss?

MR. KAMDAR:  Not from UpCodes, your Honor.

MS. WISE:  No, your Honor.

THE COURT:  Okay.  So then I think we

reached a compromise for the first issue.  For the second one, ICC is going to go back and create this list with the caveat language we've discussed.  And then for the third one, you know, given the representations, it sounded like defendants were going to perhaps put forth another RFA.

If this in the coming days or weeks or whatever does not get resolved, you can send me another letter.  But are we all on the same page in terms of moving forward?

MS. WISE:  I believe so, your Honor.

MR. KAMDAR:  Yes, your Honor.

THE COURT:  Okay, great.  Thanks so much for your time.

MS. WISE:  Thank you, your Honor.

MR. KAMDAR:  Thank you, your Honor.

C E R T I F I C A T E

I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of International Code Council, Inc. et al v. Upcodes, Inc. et al, Docket #1:17-cv-06261-VM-VF, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature  __*Marissa Lewandowski*__

Marissa Lewandowski

Date:      October 17, 2025