**MORRISON FOERSTER**

2100 L STREET, NW
SUITE 900
WASHINGTON
DC 20037

TELEPHONE: 202.887.1500
FACSIMILE: 202.887.0763

MORRISON & FOERSTER LLP

AMSTERDAM, AUSTIN, BERLIN, BOSTON, BRUSSELS, DENVER, HONG KONG, LONDON, LOS ANGELES, MIAMI, NEW YORK, PALO ALTO, SAN DIEGO, SAN FRANCISCO, SHANGHAI, SINGAPORE, TOKYO, WASHINGTON, D.C.

January 2, 2026

Writer's Direct Contact
+1 (202) 887-6954
AKamdar@mofo.com

**Via ECF**

The Honorable Valerie Figueredo
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re:** *International Code Council, Inc. v. UpCodes, Inc., et al.*
> **Consolidated Case Nos. 1:17-cv-06261, 1:20-cv-04316, 1:22-cv-10815**

Dear Judge Figueredo:

ICC has sued UpCodes for false advertising on the ground that the building codes published on its website contain occasional errors in the face of UpCodes having publicly characterized the service as being "up to date." When UpCodes sought discovery into the accuracy of ICC's own posted codes, ICC bobbed and weaved, dragging its feet and repeatedly forcing motion practice. The RFAs that are the subject of ICC's letter motion are intended to pin down a basic set of facts underlying this dispute.

ICC's motion is largely academic. It claims that UpCodes is demanding responses to 3,225 RFAs, but in fact UpCodes has already offered to withdraw the vast majority of these requests, narrowing the set of outstanding RFAs to a targeted set of 42 requests. Those requests seek baseline admissions concerning (1) ICC's versioning and correction framework for its online codes, and (2) the application of that framework to a single, representative version of a code. That ICC not only refused to respond even to this narrow subset but fails to substantively address the proposed compromise in its filing shows that ICC's objection is not to the burden of responding, but to providing the foundational facts the RFAs seek to establish. UpCodes respectfully requests that the Court deny ICC's motion and require ICC to respond to the narrowed set of RFAs as proposed.

**I.      Background**

ICC sued UpCodes for false advertising, alleging that UpCodes mischaracterized its website as "up to date" because it contained occasional errors. False Advertising Compl. ¶¶ 29–42. In defense, UpCodes has sought discovery into ICC's far more serious record of mistakes in its own offerings, which is relevant to how a reasonable consumer would evaluate the truth of UpCodes' statements. At every turn, ICC has resisted—forcing UpCodes to file repeated motions to compel plainly relevant discovery. *See, e.g.*, ECF Nos. 147; 162; 249; 250.

The issue came to a head at the October 8, 2025 discovery hearing. There, ICC stated that, unlike UpCodes, it generally does not update its online codes to reflect interim changes or errors. ICC's counsel represented that its posted codes remain "static," noting that "with respect to errors . . . ICC addresses them in the next published version" rather than updating the live website. Kamdar Decl., Ex. A at 35:5-7, 41:14-20. Following that representation, the Court suggested that UpCodes serve a "more targeted" set of RFAs. *Id.* at 43:24-44:3.

1

**MORRISON FOERSTER**

The Honorable Valerie Figueredo
January 2, 2026
Page Two

## II.     UpCodes' Newest RFAs and the Meet-and-Confer Record

UpCodes then served RFAs designed to confirm these representations.  This included a general set (nos. 273-308) that addressed ICC's contentions concerning the maintenance, modification, and accuracy of its own code offerings.  ECF No. 263-1 at 2-7.  The remaining RFAs were a formulaic set of 12 requests repeated for each building code contained in ICC's production of its current website content.  These RFAs sought to establish that each code was placed online by ICC on the stated date of its publication, that it has remained static since publication, and that it does or does not contain what ICC would consider errors.

During the parties' meet and confer on December 5, 2025, ICC objected to the volume of requests and to the burden of researching whether specific code versions contained errors.  Kamdar Decl. ¶ 2.  Later that same day, UpCodes proposed a compromise to resolve both concerns:  if ICC would respond to the small set of general RFAs (nos. 273-308) and one exemplary (and further narrowed) set of code-specific RFAs (nos. 309-314), UpCodes would withdraw the remainder.  Kamdar Decl., Ex. B at 5.  This proposal reduced the set of outstanding requests from 3,225 to 42.  UpCodes emphasized to ICC that the "key objective of these RFAs is to confirm that each code's listed version date (as we define in the RFAs) reflects the date it was posted; that each of those versions was static in nature; and when each version was available on ICC's website." *Id.*

On December 9, ICC stated that it was "amenable to the proposed narrowing . . . so long as all other requests are formally withdrawn." *Id.* at 4.  On December 11, UpCodes agreed, stating it would "conditionally withdraw RFAs 315-3497, conditioned upon ICC answering RFAs 273-314," as well as agreeing to ICC's requested extension to respond to the more limited set. *Id.* at 1-2.  Later that same day, ICC reversed course, stating for the first time that "ICC agreed to accept an extension of time ***while the parties continue to discuss the subset of RFAs 273-314 in exchange for UpCodes withdrawal of RFAs 315-3497***." *Id.* at 1 (emphasis added).

Notably, UpCodes had not proposed to hold the remaining requests over ICC's head until it was satisfied with ICC's responses to the more limited subset of 42 requests. *Id.* at 1-2.  Instead, it offered to withdraw the additional RFAs conditioned on a mere commitment that ICC would respond to the much smaller set by an agreed-upon date, rather than object across the board or file a motion for a protective order. *Id.*  But UpCodes declined to withdraw the remaining requests "while the parties continue to discuss" the set of 42, absent a commitment to respond to even one RFA from that narrowed set, as this was no compromise at all. *Id.*  ICC then filed this motion.

## III.    ICC Should Be Ordered to Respond to the Narrowed Set of 42 RFAs

ICC offers no substantive argument why it should not have to respond to the narrowed set of RFAs that UpCodes offered—and ICC appeared to accept—as a compromise.  Certainly, its objections to the burden caused by volume[1] fall away in the face of the narrowing of 3,225 RFAs to 42.  *Pasternak v. Dow Kim*, No. 10 CIV. 5045 LTS JLC, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (That a

---

[1] ICC's objections to the volume of RFAs served and its refusal to respond also ring hollow in view of the fact that, in the predecessor matter to this one, ICC served on UpCodes a set of 1,180 RFAs, and UpCodes responded to each and every one.  Kamdar Decl. ¶ 3.

**MORRISON FOERSTER**

The Honorable Valerie Figueredo
January 2, 2026
Page Three

party "has served 230 RFAs does not, in itself, establish an undue burden or serve as a basis for a protective order. There are any number of cases in which courts have approved even greater numbers of RFAs."). Likewise, its objection to having to do research with respect to the accuracy of its reproduction of dozens of codes no longer applies in view of the narrowing of the code-specific RFAs to just one code—and the fact that the narrowed RFAs do not even ask about errors specific to any code, addressing only the availability of the one exemplary code and whether or not its display within ICC's codes offering has remained static over time. ECF No. 263-1 at 7-8 (RFA nos. 309-314).

ICC's only other complaint is that UpCodes' RFAs are "vague and ambiguous and improperly seek admissions regarding questions of law." This part of ICC's letter appears to be directed solely to ICC's objection that what constitutes an "error" is insolubly ambiguous. This position is untenable for three reasons. First, ICC's entire lawsuit is premised on the identification of "errors" on UpCodes' website sufficient to make out a claim that UpCodes' characterizations with respect to its code content were false. False Advertising Compl. ¶ 1 ("Defendants falsely have claimed and still claim that the copies of the codes they offer are, e.g., accurate, completed, and up-to-date. To the contrary, Defendants' copies of the building codes are incomplete and riddled with errors."); *see also id.* ¶¶ 29-47, 53, 73, 84, 94. It is unclear how ICC can square that with the position it has taken in its motion.

Second, the RFAs adopt ICC's own terminology. For example, requests concerning "high priority errors" track ICC's representation that it will only update static content "to address certain high priority errors." Kamdar Decl., Ex. C at 1. In view of ICC's (illogical) position that the "static" nature of its codes obviates any issues with accuracy—but that it nonetheless fixes what it calls "high priority errors" when it finds them—ICC cannot now complain that it does not understand that term.

Third, UpCodes' narrowed RFAs do not seek any sort of analysis, legal or otherwise—only an admission that ICC's online codes offering has historically contained some errors, and admissions concerning ICC's practices concerning those errors when discovered. *See, e.g.,* ECF No. 263-1 at 3 ("[RFA] No. 281: Admit that at least one Version of ICC's Online Codes has contained errors. . . . [RFA] No. 284: Admit that, if ICC becomes aware of an error in a specific Version of ICC's Online Codes, ICC does not update or modify that Version of ICC's Online Codes."). Admitting or denying those requests does not require parsing specific errors.

Beyond these general complaints, ICC's letter does not address a single specific RFA from the narrowed set in UpCodes' compromise offer. That is because these RFAs do exactly what RFAs should: seek to formally narrow the set of factual disputes underlying contested issues. Having sued UpCodes for false advertising on the basis of alleged errors in the codes posted on its website, ICC can have no legitimate objection to responding to a limited set of RFAs addressing its practices with respect to its own offering.

### IV.   Conclusion

For the reasons stated above, ICC should be compelled to respond to UpCodes' RFA nos. 273-314.

# MORRISON FOERSTER

The Honorable Valerie Figueredo
January 2, 2026
Page Four

Sincerely,

*/s/ Aditya V. Kamdar*

Aditya V. Kamdar

4