```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK


INTERNATIONAL CODE COUNCIL,
INC., et al.,                          : Docket #17-cv-06261

                    Plaintiffs,  :

     -against-                         :

UPCODES, INC.,                         : New York, New York
                                         January 9, 2026

                    Defendant.   :

---------------------------------:

                   PROCEEDINGS BEFORE
             THE HONORABLE VALERIE FIGUEREDO
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:      MORGAN LEWIS & BOCKIUS LLP
                    BY:  JANE W. WISE, ESQ.
                    1111 Pennsylvania Ave, NW
                    Washington, DC 20004


For Defendant:      MORRISON & FOERSTER, LLP
                    BY:  ADITYA KAMDAR, ESQ.
                    425 Market Street
                    San Francisco, California 94105

Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

THE DEPUTY CLERK:  Good morning.  This is the matter of International Code Council, Inc., et al. vs. Upcodes, Inc., et al., Case Number 17-cv-6261.  The Honorable Valerie Figueredo presiding.

Counselors, can you please make your appearances for the record, starting with Plaintiff's counsel?

MS. WISE:  Good morning.  This is Jane Wise on behalf of International Code Council.

THE DEPUTY CLERK:  Defense?

MS. KAMDAR:  Good morning, Your Honor. This is Aditya Kamdar on behalf of the Upcodes defendants.

THE COURT:  Good morning, everyone.  So I think we have a few -- at least two issues to discuss.  I'll start with the letters that came in regarding the request for admission.  The first one was filed on December 12th at ECF 263.  It was ICC's request for the protective order.  And then Upcodes' response is January 2nd.  It was at ECF 269.

I read the letters.  I'm just trying to understand, given the narrowed or compromised offered where then there were only 42 requests sought, 42 RFAs for which Upcodes wanted a response,

do we -- is there -- do we still have an issue?  Is there -- is -- does ICC -- is there still a problem with responding to the 42?

MS. WISE:  Good morning, Your Honor.  This is Jane Wise.  I think this issue is likely moot.  ICC served responses to all three -- sorry, 3,225 requests.  We did so because, as Your Honor is aware, Rule 36 has a provision where if no response is provided, then the request is deemed admitted by operation of law.  So we moved for the protective order, but we also felt ICC had no choice other than to respond to all of the requests.  So Upcodes has had those responses since December 12th and has not raised any issues with them.

THE COURT:  Is this issue then moot from Upcodes' perspective?

MS. KAMDAR:  I'm not entirely sure.  I think the issue of the blanket protective order is probably moot.  I don't know if -- I guess -- we have received responses to the RFAs.  The responses were largely that ICC was objecting to the RFAs and that they call for a legal conclusion and that ICC was seeking a protective order.  So ICC can't admit or deny the requests.

I mean, we -- we don't think those are

proper responses or correct responses. We suspected that ICC submitted that because, as Ms. Wise mentioned, you know, better to submit something than nothing. But these 42 RFAs which you have in front of you seek sort of basic facts and use language that ICC has used, and so we wanted admissions or denials. And I think that there's enough in there that we could get admissions or denials, but ICC's responses to every single one was that it cannot admit or deny the requests as written, and we don't think that's -- that's proper.

MS. WISE: Just for the sake of clarity, Your Honor, that's the first issue that we've heard with respect to our responses, and it's been almost a month. So if Upcodes intended to move to compel different responses or took issue with those objections, I would have expected to hear from them before now.

I would also note that Upcodes had two full days with ICC's 30(b)(6) witness and the individual responsible for ICC's digital code platform and did take testimony concerning the same topic of these RFAs. So I think it was our understanding that between the responses to the RFAs and the testimony from witnesses, that Upcodes was satisfied.

Otherwise, it would have moved -- timely moved to compel.

But with respect to the instant motion, which is for a protective order, I do think the motion is moot.

MS. KAMDAR:  I guess I'm a little confused, Your Honor, because the motion was filed the same day as ICC responded to these requests or purportedly responded to these requests.  So I thought we were here to discuss a different issue. You know, it seems like from ICC's motion that it filed simultaneously that they had burden objections and other objections, and we were here to respond to those.

MS. WISE:  I mean, I'm happy to respond if that's helpful to Your Honor.

THE COURT:  Well, let me -- and I apologize 'cause I may not be entirely following.  So let me just make sure we're all on the same page.

It sounds like on December 12th, or give or take, ICC did file -- did submit responses to the 3,000 or so RFAs.

MS. WISE:  Yes.

THE COURT:  It sounds like the ones that really Upcodes wants answers to are these subset of

42.  It sounds like perhaps even despite saying that they couldn't admit or deny, it sounds like the response still gave you enough information -- gave Upcodes enough information such that maybe for the 42, those also have adequate responses.  Is that right?

MS. KAMDAR:  I don't think we agree that the responses are adequate.  It -- at least our read of these responses are that -- I mean, they just say ICC cannot admit or deny the request.  So I don't think we would agree that they were adequate.

THE COURT:  Okay.  So, then, perhaps is the only issue left, then, the response to these 42?

MS. WISE:  I disagree, Your Honor.  So one of the things that the parties were in disagreement on in terms of why we had to file for the protective order was the scope of the request.  ICC tried to get agreement on a narrower subset, and Upcodes demanded a couple of things that we thought were far beyond what they're entitled to under Rule 36.

One of them was that ICC give up the opportunity to object to the responses and demanded an answer instead.  The rule is clear that you can answer or object, and so is the case law on that topic.  The second is that ICC agree that its

responses to RFAs 309 through 314 would be exemplary for each of the other codes specified in the websites that ICC produced.

I don't see how our responses with respect to what was going on with one publication could be deemed exemplary for the hundreds of other codes that are at issue in this case.  So we rejected that response and instead we provide responses, which my colleague is correct, were objections to all 3,200 of these RFAs.  So I don't agree that the 40 are what are left.

I think the opportunity to get further responses on those 40 were things that the parties were negotiating in advance of ICC having to respond to all of the requests and in advance of having to brief this protective order issue, which, to be clear, we filed because of the 3,225, not the 40, which was never on the table as they presented it in their letter.

THE COURT:  So let me ask -- let me ask you a different question.  What would you like -- what would you like from me?

MS. WISE:  I think we would request that you find the motion for protective order moot in light of ICC's responses to the RFAs.  And if

Upcodes has a problem with those responses, it can meet and confer in the ordinary course.

MS. KAMDAR:  I guess I'm a little surprised, Your Honor.  Like I mentioned, ICC filed this motion and also served responses on this exact same day.  And what I'm hearing from the other side is that the grounds for this motion were moot the same day they filed their responses, and ICC did not bother to tell us or the Court that that was its position.  We thought we were here to discuss something else.

And its responses -- and, you know, I'm happy to read one right now.  The first one was ICC filed a motion for protective order concerning this request, and this is for every single request, and serves these objections for avoidance of doubt that ICC preserves and does not waive all rights and objections to this request.  And then it includes certain objections, including burden.  And then it says, accordingly, ICC cannot admit or deny this request.

Our understanding, based on the plain language of this response, is that ICC was essentially preserving objections, but not responding to our request for admission because of

their motion for a protective order.  That seems to be what this says.  All we are asking is for ICC to respond to these 42 requests that we have identified.  And it appears, based on this response, that ICC has not done so.

THE COURT:  Okay.  So perhaps we can just talk about the 42 requests that Upcodes have sort of de facto agreed to narrow their RFAs to.

Mr. Kamdar, I may have missed it, but are the 42 requests on the docket somewhere?

MS. KAMDAR:  Yes.  We identified them by number in our brief.  But in Exhibit A to the plaintiff's brief, which I believe is Docket 263-1.

MS. WISE:  And the actual requests start at page 5.

MS. KAMDAR:  Thank you.  And it's numbers 273 to 314.

MS. WISE:  And just for clarity, Your Honor, ICC does object to providing -- to being compelled to provide more fulsome responses to these 42, including because we haven't conferred at all about them.

But specifically, I will say these requests remain overly broad.  You know, one of the things that we raised in our letter was that these requests

don't require just an admission of a fact that that's not really in dispute.  They still require voluminous research to try and admit or deny them. If you look at Request 280, it says admit that the versions of ICC's online codes, which is a defined term that refers to an entire section of the ICC website that contains not only ICC's codes, but third-party codes, have never contained high-priority errors.  Request 289, admit that the ICC's online codes are out of date between the interim change in a locality's amendments until the next cycle of codes.

I don't know how we would admit -- you know, to do any of this would require us to look at every single code that is on ICC's code website, the identified website, figure out what the law was, figure out if the document that's posted is out of date or if there was an interim change.  I mean, that's just not the nature of an RFA.

THE COURT:  Can I just ask, Ms. Wise, because I thought at the prior -- I thought the reason this came about was at the prior conference there had been a representation that you didn't do interim changes.  It was just once, like, I guess a new code was uploaded that any changes were added or

made.

MS. WISE:  Right.  And that's true, but it's on a jurisdiction-by-jurisdiction basis.  So if you say on this entire website that there was no interim change, for example, California might have issued an interim change and told ICC to post a new publication.  So, you know, that, in our terminology, would be -- would not be out of date, it would be following the jurisdiction.  But to do that on the entire website, I just don't see how we could answer that.

There are jurisdictions that require ICC to post either an errata or a new version or something else.  I don't -- I'm not saying that this changes the substance of anything that we have discussed previously.  It's just not something that can be answered in this type of RFA about the entire website writ large.

And like I said before, and I think like the testimony that they received from ICC witnesses, this is jurisdiction dependent.  So some jurisdictions say, yeah, we know that there was a emergency order that impacts this section of the code.  We do not want to post an errata.  We will do that in the next code cycle.

So from our perspective, that's not out of date, that's following what the jurisdiction asks. But, you know, how do I answer that RFA based on that?

THE COURT:  Understood.  Mr. Kamdar, did you want to respond?

MS. KAMDAR:  Yes.  I think like what Your Honor, I think, was getting at, we have taken ICC's representations that they've made to the Court and to Upcodes and have tried to distill them, often word for word, in these RFAs.  And part of the reason why we have these general RFAs is not to make it more difficult, but to actually make it easier. It seems like you don't have to go jurisdiction by jurisdiction to answer many of these requests.  If the answer is yes, no or sometimes, basically, or as I guess in the words of Rule 36 a qualified admission or denial, I think we're entitled to that.

And it seems like ICC has enough information to know that, yes, sometimes they do reflect interim changes or maybe they never reflect interim changes, for example, to take the RFA we were just talking about.

So our position is that we have been given these representations.  We are trying to nail down

whether or not these representations are accurate or not and in what circumstance -- in what circumstances they are accurate or not.  And so we've crafted these RFAs to get at that.  And there's enough information there that I think we merit more than a response that says that ICC can't admit or deny them.

THE COURT:  Can I just ask you a question?  So it sounds like, for instance, if we're talking about admit that ICC's online codes do not reflect interim changes in a locality's amendment, it sounds like because it's jurisdiction dependent, sometimes it does, sometimes it doesn't, that you'd be -- you'd want them to just deny and then you'd move on to the next one.  Is that -- did I --

MS. KAMDAR:  Correct.

THE COURT:  Okay.  And, Ms. Wise, given what you told me, is that not a viable option for you all?

MS. WISE:  No, because I think if you deny that, then Upcodes is going to rely on that and say that our codes are out of date.  I mean, I think that's part of the problem with these requests is what they're really looking for is an interrogatory response.

I heard from Mr. Kamdar that they want us to spell out what -- you know, sometimes what are the sort of things that impact whether it's a yes or a no.  But I think it's unfair to say that it's a denial when sometimes it does have a change in the locality's amendment.  Sometimes it doesn't.

THE COURT:  Right, but let me just ask --

MS. WISE:  I mean, that --

THE COURT:  I could totally be wrong here. I'm just trying to understand.  If you're only admitting or denying the exactly worded RFA they gave you, I understand they might then later claim, well, it means you're out of date.  But it sounds like you'd have a response back given the wording of this RFA and given the information you potentially have from witnesses and their depositions about how different jurisdictions might operate and that would cause different changes in the online codes.

MS. WISE:  I just think we would still have to say we can't admit or deny it because the rules require you to admit in part or deny in part.  And that's going to be jurisdiction specific.  I mean, and I don't think it solves the out-of-date problem in 289, or not accurate --

THE COURT:  Mr. Kamdar, did you want to --

MS. WISE:  -- in 290.

THE COURT:  -- say something?

MS. KAMDAR:  I'm sorry, Your Honor, I missed that.

THE COURT:  Oh, no.  I wasn't sure if I cut you off.  I thought you were going to say something.

MS. KAMDAR:  Oh.  Oh, no, no.  I hadn't said anything.

THE COURT:  Okay.

MS. WISE:  The other thing I would say with respect to these requests for admission is a significant number of them are improper discovery on discovery.  This is something, again, that the parties have not met and conferred about.  But if you look at -- starting at Request 292, this has to do with information maintained by ICC.  None of this has any relevance to the dispute at hand.  Right?

Has ICC preserved data sufficient to create a historical version?  First of all, we've produced historical versions.  We've produced every version of the codes on the ICC codes online.  But going into what ICC preserved and didn't preserve, these are not proper RFAs all the way through 307.

THE COURT:  Okay.  So, Ms. Wise, it sounds like ICC's preference would be to have the parties

perhaps go back and discuss the 42 requests and then bring it back if you have an issue, or is that not -- does that sound right?

MS. WISE:  Yeah.  That's correct.

THE COURT:  And, Mr. Kamdar, what -- what does Upcodes want me to do?  Compel responses, I'm assuming?

MS. KAMDAR:  I mean, ideally.  I think we -- I think, as Your Honor noted, many of these requests as narrowed seek things that ICC could admit or deny.  I don't think Ms. Wise is correct that a denial --

MS. WISE:  I'm sorry, I cut out.

MS. KAMDAR:  Oh, I'm sorry.  Oh, I apologize.  Do you want me to repeat myself?

MS. WISE:  I -- yeah.  Would you mind?

MS. KAMDAR:  No, no problem.  I was just saying, I think, as Your Honor noted, many of these requests do appear to be -- call for things that can be admitted or denied.  I don't agree that a denial sort of holds as much power as Ms. Wise made them out to hold.  I think RFAs sort of seek admissions. And anything else, including denials, are, as Your Honor noted, just denying the RFA as worded. And I think there's enough in here for ICC to

respond, particularly, you know, because we don't want to drag this out even more.  If Your Honor thinks it makes most sense for us to meet and confer more, we're happy to do that, though.

THE COURT:  And just so I have it, the at-issue 42 narrowed requests are 273 to 314?

MS. KAMDAR:  Correct.

THE COURT:  Okay.  Do we want -- go ahead, Ms. Wise.

MS. WISE:  Sorry.  Your Honor, I think one of the issues that -- to the extent you're inclined to, I suppose, compel, even though that is not, you know, presently before the Court, we do have a strong objection to the notion that any of the responses would be interpreted as exemplary of the remaining 3,200 RFAs, which that was requested in Upcodes 269-3.  You can see on pages 4 and 5 where Upcodes said that it wanted to treat 309 to 314 as exemplary for each code -- each specific set of web pages ICC produced.

THE COURT:  Okay.  If we just table this discussion a minute, there's -- I think we're also supposed to discuss the issue with the third-party deposition.

MS. WISE:  Uh-huh.

THE COURT:  Did that deposition go forward, the H2M Architects --

MS. WISE:  It did, Your Honor.  It did, Your Honor.  There was --

THE COURT:  Oh, no.  Go ahead.  Is it still an issue?

MS. WISE:  I think that's probably a question for the other side.  The deposition did go forward.  There was no objection to continuing the deposition from H2M.  H2M presented a prepared deponent and we -- Upcodes joined and had an opportunity to cross that deponent.  So -- and I would note that Upcodes also, following the deposition, identified H2M on their initial disclosures as having relevant information to the case.  So I don't know if Upcodes still seeks to exclude any use of the transcript.

MS. KAMDAR:  I can respond, Your Honor.

THE COURT:  Yes, please.

MS. KAMDAR:  I agree, because the deposition happened and in the interest of moving forward Upcodes is willing to withdraw the motion. We don't waive our objections to ICC's conduct.  We still object to the fact that the deposition went forward despite the Court's limits on third-party

discovery and including explicitly stating that ICC is not allowed to communicate with any of Upcodes' customers unless there's an agreement, prior court order.  We don't think it was a proper deposition, and there was a notice problem.  Upcodes didn't learn about the deposition until the day before, and only because H2M and not ICC had told us.

And so, you know, we think those actions were improper and not reasonable and we made those objections on the record at the deposition.  But as Ms. Wise mentioned, the deposition occurred and we don't think there's much more to do about it here.

MS. WISE:  May I respond, Your Honor?

THE COURT:  Yes, please.

MS. WISE:  So I just want to clarify a couple of things because I just think that the one-sided nature of the objections were perhaps misleading.  Upcodes found out about that deposition the -- within 24 hours of when ICC found out that it was going to move forward.  So I don't know how we could have given them much more notice than we did.

With respect to the protective order that went in place with the other parties represented by Morrison Foerster, it appeared from those parties' counsel Morris and Foerster -- you know, obviously

Upcodes didn't make that objection, but it's the same counsel.  So I'm struggling a little bit with the -- with the nomenclature.  But those parties' -- those third parties' counsel made it sound like we had sat on the identity of those witnesses.  And, in fact, many of those witnesses had not produced any documents until shortly before the notices were served for depositions.

So I just didn't want it to appear to the Court that this was a laying-in-wait circumstance. We had been working with Upcodes and had received documents from many MoFo-represented parties only a few days before we served deposition notices.  And we had tried to do that because, one, we didn't understand your order to prevent us from communicating with any third parties after Your Honor allowed subpoenas to go out; and, two, because we wanted to minimize the number of third parties that we contacted to those who produced documents, and to see what those documents were and if they were going to be useful depositions.  So I just wanted to clarify that on the record.

THE COURT:  Well, it sounds like, then, perhaps there's nothing left to do with the -- with the deposition issues.  Although, you can correct me

if I'm wrong.

MS. WISE:  Right.  No, I think you're right, Your Honor.

MS. KAMDAR:  I think that's right, Your Honor.

THE COURT:  Okay.  So, then, it sounds like the only thing left is the RFAs.  Let me just give it some thought and I'll enter a written order.  Do you all have any other discovery disputes that need to be discussed?  Not today, but generally, do you need another conference?

MS. KAMDAR:  At least not before the Court. I don't know is, I think, the safest answer I could give.  I know there's still some pending productions in this case, but I don't know if there's any actual disputes right now.

THE COURT:  Okay.  Okay.  So then --

MS. WISE:  I -- I -- I would say the same.

THE COURT:  Sorry, Ms. Wise, go ahead.

MS. WISE:  Oh, I just said I would say the same.

THE COURT:  Okay.  So I'll wait to see if there's anything that comes in from the parties. I'll give you an answer on the RFAs.  And, otherwise, thanks for your time this morning.

MS. WISE:  Thank you, Your honor.

MS. KAMDAR:  Thank you, Your Honor. Appreciate it.

C E R T I F I C A T E

I, Marissa Lewandowski, certify that the foregoing transcript of proceedings in the case of International Code Council, Inc. et al v. Upcodes, Inc. et al, Docket #1:17-cv-06261-VM-VF, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature  __*Marissa Lewandowski*__

Marissa Lewandowski

Date:      January 14, 2026